# EXHIBIT #4

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.416 Filed 12/23/25 Page 2 of 15

Moralez v. Moore, Not Reported in Fed. Supp. (2017)
2017 WL 9802881

2017 WL 9802881
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Abelardo MORALEZ, Plaintiff,

v.

Michael Shannon MOORE, Thomas Wilson, Amanda Riska, Robert D. Moore, Jason Ganzhorn, Richard Michael Klimmer, Gerald Whalen, Glenn J. Page, Patrick Burtch, Jenny Morris, Sheridan Surveying, P.C., Thomas Tinklepaugh, Adam Brooker and Michigan Liquor Control Commission, Defendants.

Case No. 2:17-cv-10567
|
Signed 11/21/2017

**Attorneys and Law Firms**

Abelardo Moralez, Jackson, MI, pro se.

Brendon R. Beer, Abbott, Thomson, Mauldin, Parker & Beer, PLC, Jackson, MI, Patrick A. Aseltyne, Jason A. Geissler, Victoria L. Convertino, Johnson, Rosati, Schultz & Joppich PC, Felepe H. Hall, Elizabeth R. Husa Briggs, MI Dept. of Attorney General, Lansing, MI, Audrey J. Forbush, Rhonda R. Stowers, Plunkett & Cooney, Flint, MI, for Defendants.

**REPORT AND RECOMMENDATION TO GRANT SEVERAL MOTIONS TO DISMISS (DEs 17, 18, 28, 31, 71 & 75)**

Anthony P. Patti, UNITED STATES MAGISTRATE JUDGE

*1 **I. RECOMMENDATION**: The Court should grant each of the six above-described motions to dismiss filed by a combined 13 Defendants. The motion to dismiss filed by Defendant Michigan Liquor Control Commission (DE 89) will be addressed under separate cover.

**II. REPORT:**

    **A. Introduction**

Plaintiff filed this lawsuit, *in pro per*, on February 21, 2017. On the same day, summonses were issued in the following names:

  1. (Assistant) Attorney General Gerald Whalen (Michigan Liquor Control Commission (MLCC) )

  2. Michael Shannon Moore (Moore Company LLC and Moorski's Pub)

  3. Ms. Jenny Morris (Director for City of Jackson Neighborhood & Economic Operations—Title Liens Acquisitions)

  4. Mr. Patrick Burtch (City Manager for the City of Jackson-Title Liens Division)

  5. Amanda Riska (Clerk and Register of Land Deeds for County of Jackson)

  6. Officer Thomas Tinklepaugh (City of Jackson Police Department)

  7. Officer Jason Ganzhorn (City of Jackson Police Department)

  8. Officer Richard Michael Klimmer (City of Jackson Police Department)

  9. Officer Adam Brooker (City of Jackson Police Department)

  10. Robert D. Moore ( (Moore) Company LLC and Moorski's Pub)

  11. Sheridan Surveying PC

  12. Glenn J. Page (Interim Executive Director of Counsel Judicial Tenure Commission)

  13. Hon. Thomas Wilson (Chief Circuit Judge for Jackson County Fourth Judicial Circuit and Court of Equity)

(DE 2.) Each of these Defendants is represented by counsel. (*See* DEs 6, 15, 16, 30, 32, 33, 48, 74.)[1]

    **B. Instant Matters**

Judge Michelson has referred this case to me for pretrial matters. Each of the above-listed defendants—either singularly or in combination with other defendants—has filed a motion to dismiss:

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.417 Filed 12/23/25 Page 3 of 15

Moralez v. Moore, Not Reported in Fed. Supp. (2017)
2017 WL 9802881

1. On March 28, 2017, Defendants Michael Shannon Moore and Robert D. Moore filed a motion to dismiss based upon lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted (DE 17)

2. On March 29, 2017, Defendants Judge Thomas Wilson and Amanda Riska filed a motion to dismiss based upon failure to provide any factual or legal basis for his Eighth and Fourteenth Amendment claims and judicial immunity (DE 18)

3. On May 3, 2017, Defendant Glenn J. Page filed a motion for dismissal based upon failure to satisfy the pleading standard, Eleventh Amendment immunity, and qualified immunity (DE 28)

4. On May 17, 2017, Defendant Gerald Whalen filed a motion to dismiss based upon Eleventh Amendment immunity, failure to state a claim upon which relief can be granted, and qualified immunity (DE 31)

**\*2** 5. On July 11, 2017, Defendants Burtch, Morris, Ganzhorn, Tinklepaugh, Klimmer and Brooker filed a motion to dismiss based upon failure to state a claim (DE 71)

6. On July 13, 2017, Defendant Sheridan Surveying, P.C. filed a motion to dismiss based upon lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted (DE 75)

Plaintiff's responses to the first four motions were due no later than June 2, 2017. (DE 35 at 4.) Plaintiff filed a response on June 2, 2017 and, again, on June 14, 2017. (DEs 41, 58).[2] Defendants Page and Whalen each filed a reply. (DE 61, 59.) Plaintiff's responses to the latter two motions were due on or before August 18, 2017 (DE 78); however, no such responses have been filed.[3]

### C. Fed. R. Civ. P. 12

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

**\*3** Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ). Moreover, "courts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[4]

### D. Discussion

Although Plaintiff's complaint attempts to allege a variety of state and federal law causes of action, the scope of this case was narrowed by the Court's July 24, 2017 order of partial dismissal. Significantly, Judge Michelson explained:

> ... as the Court declines to exercise supplemental jurisdiction over Moralez's state-law claims, to the extent any of the counts in his complaint assert a state-law cause of action, the claim is DISMISSED. Any further briefing in this case should be limited to federal law.

(DE 79 at 5.)[5] As such, this report focuses on assertions of federal law violations that Plaintiff makes in his complaint —such as 42 U.S.C. §§ 1983 ("Civil action for deprivation of rights"), 1985 ("Conspiracy to interfere with civil rights"); 18 U.S.C. §§ 242 ("Deprivation of rights under color of law"), 1951 ("Interference with commerce by threats or violence"), §§ 1961-1968 (Racketeer Influenced and Corrupt Organizations Act (RICO) ). (*See* DE 1 at 3, 8, 9, 11, 16, 18.)[6]

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.418 Filed 12/23/25 Page 4 of 15

Moralez v. Moore, Not Reported in Fed. Supp. (2017)
2017 WL 9802881

**1. Factual allegations**

*4 Plaintiff resides at 729 Page Avenue during the winters and at 705 Page Avenue during the summers. (DE 1 at 5.) He claims that Moorski's Pub—seemingly owned by Defendant Michael Shannon Moore—is located at 723 Page Avenue. (DE 1 at 1, 18.) The attachments to Plaintiff's complaint evidence several events that relate to Page Avenue and inform the claims at bar:

- On July 4, 2013, Officer Grant of the Jackson City Police Department was dispatched to 729 Page Avenue for an arson report. (*See* DE 1 at 37-41, 26 [Complaint # 2013-00018422].)

- On July 22, 2015, an inspection was performed at 729 Page Avenue. On July 24, 2015, the City of Jackson's Neighborhood & Economic Operations issued a notice of several exterior violations at the 729 Page Avenue property, including roofing, siding, driveway, gutters, chimney, stairs/porches, missing screen on insulated door, and electrical (loose service cable). Re-inspection was to occur on October 26, 2015. (*See* DE 1 at 42-44; *see also* DE 1 at 3 ¶ 3, 12-13 ¶¶ 10e, 10f, DE 1 at 27.)

- On September 13, 2016, the Judicial Tenure Commission (JTC) issued its decision regarding Plaintiff's request for investigation. It appears this request concerned an alleged December 31, 2015 / January 23, 2016 refusal by County Clerk / Register of Deeds Riska and/or Judge Wilson to issue and/or consider a personal protective order (PPO) against Defendant Michael Shannon Moore based on the events of July 22, 2015 between Plaintiff and Michael Shannon Moore at 729 Page Avenue. (DE 1 at 28; *see also* DE 1 at 3 ¶¶ 2, 3, DE 1 at 12-13 ¶¶ 10e, 10f.)

- In January 2017, he applied for a building permit to repair the second story roof, yellow siding, point tuck chimney and paint at 729 Page Avenue. (DE 1 at 30-33.) It appears that Plaintiff paid for these repairs on January 23, 2017, subject to his permit being authorized. (DE 1 at 8 ¶ 8b.)

- On February 8, 2017, ALJ William A. Thompson issued an order denying several motions Plaintiff had filed in the Administrative Hearings Bureau (related to the 729 Page Avenue property), and judgment was entered in the amount of $2,510.00. Plaintiff was informed that, if he failed to contact the City Attorney's Office by March 10, 2017, it would "result in a lien being imposed on [his] real property in the amount of debt due and owing the City of Jackson." The order of judgment/final order provided for reduction of the fine if the property was brought into compliance by certain dates. (*See* DE 1 at 23-25.)

- On February 16, 2017, Plaintiff applied for a permit to repair roofing and siding at 705 Page Avenue. (DE 1 at 34-35.)

(DE 1 at 22-52.) In addition to those already mentioned, Plaintiff's attachments include copies of other City of Jackson Police Department complaint forms dated between 2013 through 2016. (DE 1 at 26-27.)

**2. The Court should grant Michael Shannon Moore and Robert D. Moore's motion to dismiss (DE 17).**

By way of background, Defendant Michael Shannon Moore is "the sole member of Moore Co., LLC." (DE 17 at 5.) Defendant Robert D. Moore is Michael Shannon Moore's father. (*Id.*) While Plaintiff identifies Robert D. Moore as a "business partner," the Moore Defendants maintain that he is "not a member of Moore Co., LLC[,]" and "does not reside on or near Page Avenue." (*See* DE 1 at 1, DE 17 at 5.)

**a. Plaintiff's factual allegations against Michael Moore and Robert Moore**

*5 In his February 21, 2017 complaint, Plaintiff makes multiple references to Defendants Michael Shannon Moore and Robert D. Moore. These allegations span the period from 2013 through 2016 and detail incidents between Plaintiff and one or both of the Moores, most of which seem to have occurred at or near Plaintiff's properties (705 Page Avenue and 729 Page Avenue) or the site of Moorski's Pub (723 Page Avenue). The events described include various allegations, such as property damage, threats, arson, racial slurs, taunts, and assaults. In addition, Plaintiff contends that the Moores moved a survey line onto Plaintiff's property at 729 Page Avenue, which has complicated his ability to fix housing code violations at this property. (*See* DE 1 at 5-8, 10-18.)

**b. The Moore Defendants' arguments**

**Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.419 Filed 12/23/25 Page 5 of 15**

**Moralez v. Moore, Not Reported in Fed. Supp. (2017)**
2017 WL 9802881

The Moore Defendants argue that "Plaintiff has failed to state a claim upon which relief may be granted." (DE 17 at 8-9.) Specifically, they contend that "Plaintiff's Complaint is completely indecipherable, completely devoid of merit, and fails to raise a plausible inference of wrongdoing by the Moore Defendants." (DE 17 at 9.) As such, the Court should consider whether Plaintiff's claims against the Moore Defendants provide "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" such that Plaintiff has stated "a claim upon which relief can be granted[.]" Fed. R. Civ. P. 8(a)(2), Fed. R. Civ. P. 12(b)(6).

**c. Potential federal claims against Defendants Michael and Robert Moore**

**i. Fourteenth Amendment**

Plaintiff's Fourteenth Amendment due process and/or equal protection claims appear limited to his causes of action against Defendants Wilson and Riska and Defendant JTC. (*See* DE 1 at 3-4.) Nonetheless, it seems that Plaintiff seeks a jury trial against Defendant Michael Shannon Moore, perhaps on this or a related basis, although it is unclear. (*See* DE 1 at 5.) More specifically, Plaintiff registers his refusal "to go to [a] bench trial before [ALJ] Thompson" without a jury or subpoenas for city police officers and Michael Shannon Moore, and, thus, seeks his right to trial by jury in federal court. (*See* DE 1 at 7 ¶ 7.) Relatedly, he challenges the $2,000 in "fines" that were the subject of ALJ Thompson's February 8, 2017 order of judgment / final order. (DE 1 at 5, 8 ¶ 8d, 23-25.)

To the extent Plaintiff alleges that his due process or equal protection rights entitle him to a *federal* jury trial against Michael Shannon Moore and/or Robert D. Moore, such a claim should be dismissed. Not only is such a claim not clearly set forth in the complaint, but also Plaintiff's response does little to clarify the basis for such an argument. True, Plaintiff's response refers to the alleged events of July 31, 2016 between Plaintiff and Defendant Michael Shannon Moore, which Plaintiff seems to claim entitles him to a "federal trial by jury." (DE 58 at 3 ¶ 8.) However, even taking as true Plaintiff's apparent claim that, on July 31, 2016, Defendant Michael Shannon Moore threatened Plaintiff in various forms and caused damage to $1,000 worth of siding at 729 Page Avenue, it is not clear how Michael Shannon Moore's actions on this date support a *federal* cause of action against this Defendant. (*See* DE 1 at 15-16 ¶ 10i, DE 1 at 27.)[7] Thus, even if a request for a jury trial in state court was not honored by either Jackson County Circuit Court Judge Wilson or non-party Ingham County Circuit Court Judge James S. Jamo, and even if Judge Wilson has, as Plaintiff alleges, denied him his right to due process, and even if Plaintiff will be subjected to irreparable harm without a federal jury trial, the response does not clarify why Plaintiff is *entitled* to a *federal trial by jury* (or otherwise) in this Court as to his claims *against Defendant Michael Shannon Moore.* The same is true as to Plaintiff's claims against Defendant Robert D. Moore, as Plaintiff's only references to Defendant Robert D. Moore appear limited to the captions of his response and related proof of service. (DE 58 at 1, 21.)

**ii. 42 U.S.C. § 1983 ("Civil action for deprivation of rights")**

*6 At the outset of his complaint, Plaintiff claims to proceed under 42 U.S.C. § 1983, which provides that:

> Every person who, under *color of* any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress ... [.]

42 U.S.C. § 1983 (emphasis added). (*See* DE 1 at 2.) Plaintiff alleges a 42 U.S.C. § 1983 claim or claims against "the combined" Defendants, seemingly to include Defendant Michael Shannon Moore. For example, he contends that Defendants acted "under *color of* state law," and deprived him of "peace and enjoyment of LANDS[,] ... civil rights, all privileges of Self-Defense, [and] ... immunities secured by the Constitution or [other] laws of the United States of America." In addition, Plaintiff claims he has been the subject of "criminal assaults based upon *Color of Skin*/Mexican American *race* ...." (DE 1 at 9 ¶ 8g (emphases added).)

To the extent Plaintiff intended to bring a 42 U.S.C. § 1983 claim against either or both of the Moore Defendants, it should be dismissed. Section 1983 "imposes liability only where a person acts 'under color' of a state 'statute, ordinance, regulation, custom, or usage.' " *Richardson v. McKnight*, 521 U.S. 399, 403 (1997) (quoting 42 U.S.C. § 1983). Stated otherwise, it "confers a private federal right of action for damages and injunctive relief against state actors who deprive

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.420 Filed 12/23/25 Page 6 of 15

Moralez v. Moore, Not Reported in Fed. Supp. (2017)
2017 WL 9802881

any citizen or person within the jurisdiction of the United States of 'rights, privileges, or immunities secured by the Constitution and laws.' " *Burnett v. Grattan*, 468 U.S. 42, 44 n.3 (1984). At this point, it is not clear how either Defendant Michael Shannon Moore or Defendant Robert D. Moore— each of whom is a private citizen—was a state actor or acting *under color of* state law. Moreover, it is not clear that these defendants satisfy "the state-actor inquiry" by way of "the public-function test," "the state-compulsion test," and/or "the nexus test." *Carl v. Muskegon County*, 763 F.3d 592, 595 (6th Cir. 2014). As such, Plaintiff has failed to state a 42 U.S.C. § 1983 claim against them upon which relief can be granted.

### iii. The Hobbs Act, 18 U.S.C. § 1951 ("Interference with commerce by threats or violence")

Plaintiff mentions the Hobbs Act within his complaint. (*See, e.g.*, DE 1 at 7 ¶¶ 7, 7b.) In particular, Plaintiff alleges "Hobbs Act—extortion." (DE 1 at 11 ¶ 10b, DE 1 at 16 ¶ 11b.) Presumably, Plaintiff is referring to "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

However, the Hobbs Act is "a criminal statute that does not provide a private right of action[.]" *Stanard v. Nygren*, 658 F.3d 792, 794 (7th Cir. 2011). Stated otherwise, "neither the statutory language of 18 U.S.C. § 1951 nor its legislative history reflect an intent by Congress to create a private right of action." *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 409 (8th Cir. 1999). Therefore, however Plaintiff —*as a private citizen*—phrases his Hobbs Act claim(s), such claims should be dismissed.

### iv. RICO (18 U.S.C. §§ 1961-1968)

 **\*7**  At the outset of Plaintiff's complaint, he alleges "[a] hybrid Tort for jury trial showing pattern of Racketeering under RICO ACT by [D]efendants in collu[s]ions." (DE 1 at 2.) Then, Plaintiff cites various sections of RICO—18 U.S.C. §§ 1962, 1963, 1964—as the bases for Count VII, which is specifically labeled "as to the Defendant Michael Shannon Moore." (*See* DE 1 at 18 ¶ 13a.)

Civil remedies under RICO are set forth in 18 U.S.C. § 1964, which provides, in part: "Any person injured in his business or property by reason of a violation of *section 1962* of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee...." 18 U.S.C. § 1964(c) (emphasis added). However, to the extent Plaintiff intended for Count VII to bring a RICO claim against Defendant Michael Shannon Moore, and while Plaintiff's "jury instruction" regarding such claim cites various sections of 18 U.S.C. § 1962, Plaintiff has not alleged how "interstate or foreign commerce" was at issue during the events of July 4-5, 2013. (DE 1 at 18 ¶¶ 13a, 13b, 13c.)

Plaintiff has also failed to plead or identify any of the other express requirements for civil RICO liability. The RICO statute provides, in relevant part, that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "[T]o state a RICO claim, [a plaintiff] must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) ). "To establish a RICO violation under § 1962(c), a plaintiff must allege that the RICO enterprise engaged in a 'pattern of racketeering activity' consisting of at least two predicate acts of racketeering activity occurring within a ten-year period." *Moon*, 465 F.3d at 723 (citing 18 U.S.C. § 1961(5) ). "The alleged predicate acts may consist of offenses 'which are indictable' under any of a number of federal statutes, including the mail (18 U.S.C. § 1341) and wire fraud statutes (18 U.S.C. § 1343)." *Id.* (citing 18 U.S.C. § 1961(1) ). The complaint in the instant matter does not contain these requisite elements, nor do the facts as pleaded support such a claim. Construing the complaint in the light most favorable to Plaintiff, if he alleges a conspiracy of any kind—and that is highly questionable—it is a common law conspiracy under state law, not a statutory one under RICO.

### v. Bullying / Ethnic Intimidation / Hate Crimes

In the introduction to Plaintiff's complaint, and presumably referring to the Moore Defendants, Plaintiff accuses them of "bullying," "ethnic intimidation," and "hate crime(s),"

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.421 Filed 12/23/25 Page 7 of 15

Moralez v. Moore, Not Reported in Fed. Supp. (2017)
2017 WL 9802881

galvanized by "racist/homophobic language," and of "barring Plaintiff from places of Public Accom[m]odations." (DE 1 at 2) (emphasis in original). For example, Plaintiff describes Michael Shannon Moore as a "racist-homophobic BULLY ... [,]" and claims the Moores molested Plaintiff at places of public accommodation. (*See* DE 1 at 7 ¶ 7c, DE 1 at 11 ¶ 10c) (emphasis in original).

**\*8** Initially, two points are worth clarification. First, "[t]o the extent that Plaintiff is attempting to hold Defendants liable for violating any federal hate crimes statutes, [he] does not have available to [him] a private cause of action." *Elliott v. CVS Pharmacy*, No. 3:09CV-954-H, 2010 WL 889536, at \*1 (W.D. Ky. Mar. 8, 2010) (citing *Hastey v. Bush*, No. 5:03–CV–0088–C2003, 2003 WL 22289885, at \*6 (N.D. Tex. Oct. 6, 2003) ("Plaintiff does not have available to him a private cause of action under any federal 'hate crimes' statutes."), *aff'd*, 100 F. App'x 319 (5th Cir. 2004) ). *See also*, *Marshall v. Yates*, No. 3:06 CV 611 S, 2007 WL 293830, at \*2 (W.D. Ky. Jan. 26, 2007). In general, the enforcement of federal or state criminal statutes "must occur, if at all, by way of a criminal action instituted by the proper state or federal authorities." *Browder v. Parker*, No. 5:11CV-P29-R, 2011 WL 2379406, at \*4 (W.D. Ky. June 15, 2011). *See, e.g.*, *American Postal Workers Union v. Indep. Postal Sys. of Am.*, 481 F.2d 90, 93 (6th Cir. 1973). Second, the Court notes that Plaintiff's complaint makes use of the phrase "places of public accommodations" at least twice in his complaint. However, to the extent Plaintiff vaguely alleges within the introduction that "defendants barr[ed] Plaintiff from places of Public Accom[m]odations[,]" (DE 1 at 2), this comment, alone, is conclusory. Also, to the extent Plaintiff alleges that the Moores had been molesting him at such places (DE 1 at 11 ¶ 10c), he seems to be referring to stores such as Walmart, Menards and Lowe's over which the Moores would not appear to have control, as opposed to referring to Moorski's Pub as a "facility principally engaged in selling food for consumption on the premises[.]" 42 U.S.C.A. § 2000a(b)(2). Stated otherwise, the Court does not interpret either of these statements as alleging that Plaintiff was denied his entitlement "to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C.A. § 2000a(a) ("Equal access").

None of the allegations made against the Moore Defendants for "Bullying / Ethnic Intimidation / Hate Crimes" provide "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" such that Plaintiff has stated "a claim upon which relief can be granted[.]" Fed. R. Civ. P. 8(a)(2), Fed. R. Civ. P. 12(b)(6). First, the legal basis or bases for any such claim is unclear. Second, while the Court acknowledges Plaintiff's allegations that Defendant Michael Shannon Moore used the term "wetback," (*see, e.g.*, DE 1 at 11, 12) and recognizes that "a continuing use of racial or ethnic slurs [could] violate Title VII," *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985), Plaintiff is not suing the Moore Defendants on the basis of an unlawful employment practice or other discernable theory under federal law. *See, e.g.*, 42 U.S.C. § 2000-e2. In other words, Plaintiff has not explained how the Moore Defendants' alleged racially charged language, attitude and/or behavior constitutes a federal cause of action against either or both of them. (*See, e.g.*, DE 1 at ¶¶ 7c, 8c, 8g, 10e, 10i, 12e.)

**3. The Court should grant Judge Thomas Wilson and Amanda Riska's motion to dismiss (DE 18).**

As previously noted, Defendant Thomas Wilson is a Jackson County Circuit Court judge. Plaintiff identifies Amana Riska as the Jackson County Circuit Court "chief clerk." It appears that Plaintiff's claim(s) against Defendants Wilson and Riska are contained within Count I, the federal bases for which appear to be 42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S. Constitution. (DE 1 at 3.)[8] Referring to the events of July 22, 2015 that were the subject of a request for a PPO against Michael Shannon Moore, Plaintiff alleges that:

- On December 31, 2015, Defendant Riska refused to issue a "PPO File Number" for Defendant Michael Shannon Moore, contrary to Michigan Court Rules permitting her to do so, because of "a written ORDER BY JUDGE WILSON NOT TO DO SO WITHOUT HIS EXPRESS WRITTEN PERMISSION[,]" thus denying Plaintiff his right to due process.

- On January 23, 2016, Defendant Wilson, "via proxy" of his law clerk's phone call, refused to conduct a hearing on Plaintiff's request for a PPO against Defendant Michael Shannon Moore. Plaintiff charges Defendant Wilson with denial of Plaintiff's right to due process by refusing the PPO file and/or to conduct a related hearing, as well as demonstrating "gross negligence" and "malfeasance of judicial duty to harm with legal intent."

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.422 Filed 12/23/25 Page 8 of 15

Moralez v. Moore, Not Reported in Fed. Supp. (2017)
2017 WL 9802881

**\*9** (DE 1 at 3 ¶¶ 2, 3.) That Plaintiff's claim against Defendants Wilson and Riska is based upon the Fourteenth Amendment's Due Process Clause—and perhaps also its Equal Protection Clause—is perhaps supported by the opening paragraph of Plaintiff's count against the JTC, which seems to allege that the JTC complaint he filed in 2016 asserted 14th Amendment violations against Wilson and Riska. (DE 1 at 4.)

Defendants Wilson and Riska argue two bases for dismissal: **(a)** Plaintiff has not provided a factual or legal basis for his Eighth and Fourteenth Amendment claims against Defendant Riska, and **(b)** Plaintiff's claims against Defendant Wilson are barred by judicial immunity. (DE 18 at 10-13.) In response, Plaintiff asserts that Defendant Wilson has denied Plaintiff his due process rights since 2014. (DE 58 at 3 ¶ 8.) He also provides a February 28, 2017 notarized statement of facts, filed in his Ingham County Circuit Court case, in which he describes the events of July 31, 2016, alleging that more than $1,000 in damage was done to his siding. (DE 58 at 9-10.)

Still, "[a] long line of [the Supreme] Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* at 11 (citations omitted). It is "overcome in only two sets of circumstances[,]" namely, "non-judicial actions" or "actions ... taken in the complete absence of all jurisdiction." *Id.* (citations omitted). These exceptions are not present here, where Plaintiff's claim concerns the judge's handling of Plaintiff's PPO request, in other words, action taken in "the judge's judicial capacity." *Id.* at 11-12. As such, Judge Wilson is entitled to judicial immunity as to his actions with respect to Plaintiff's request for a PPO.[9]

Likewise, Defendant Riska is entitled to "quasi-judicial" immunity as to the claim against her regarding certain events occurring on December 31, 2015. "[A]bsolute judicial immunity has been extended to non-judicial officers who perform 'quasi-judicial' duties." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citation omitted). "The United States Supreme Court has recognized the need for government officials to be able to make impartial decisions without the threat of personal liability for actions taken pursuant to their official duties." *Bush*, 38 F.3d at 847 n.5. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* at 847 (citation omitted).

**\*10** Whether an official is entitled to such immunity is assessed using a "functional" approach under which the Court considers "the nature of the function performed...." *Bush*, 38 F.3d at 847 (citations and quotations omitted). "As other circuits have held, enforcing or executing a court order is intrinsically associated with a judicial proceeding." *Id.* That is exactly what Plaintiff alleges happened here when, on December 31, 2015, Defendant Riska allegedly refrained from issuing a PPO File Number due to an order issued by Judge Wilson. (DE 1 at 3.) As at least one other decision of this Court has acknowledged, "quasi-judicial immunity has been repeatedly extended to court clerks." *Phillips v. Randall S. Miller & Associates*, No. 15-14082, 2016 WL 6651796, \*3 (E.D. Mich. July 26, 2016) (report and recommendation of Stafford, M.J.), *adopted* 2016 WL 4607640 (E.D. Mich. September 6, 2016) (Parker, J.). As Plaintiff's allegations against Riska concern what is obviously a court function, clearly taken in the course of her role as the Jackson County Clerk / Register of Deeds, she is entitled to dismissal of the claim(s) against her.[10]

**4. The Court should grant Defendant Glenn J. Page's motion to dismiss (DE 28).**

Glenn J. Page is among the staff members at the State of Michigan Judicial Tenure Commission (JTC). *See* http://jtc.courts.mi.gov/the_staff/index.php. More specifically, the caption of Plaintiff's complaint describes Defendant Page as the JTC's interim director. (DE 1 at 1.) However, the complaint does not appear to mention Defendant Page anywhere else.

Still, in an effort to understand Plaintiff's claim(s) against Defendant Page, I note that Count II of Plaintiff's complaint is labeled, "as to Defendant State Judicial Tenure Commission."[11] Here, Plaintiff seems to take issue with the JTC for its handling of his 2016 complaint against Wilson and Riska alleging violation of the Fourteenth Amendment Due Process and Equal Protection Clauses, which culminated in the September 13, 2016 letter denying Plaintiff's grievance, signed by then-JTC Executive Director and General Counsel, Paul J. Fischer. (DE 1 at 4, 28). Plaintiff apparently claims to

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.423 Filed 12/23/25 Page 9 of 15

Moralez v. Moore, Not Reported in Fed. Supp. (2017)
2017 WL 9802881

have alleged that Wilson violated state and federal laws and to have asked that Wilson be removed from employment with the County of Jackson and "replaced by a[n] Hispanic State Judge." (DE 1 at 4.)[12]

**\*11** The Court should conclude that Defendant Page is entitled to dismissal as to Plaintiff's claims against him. Preliminarily, it would not appear that a federal court has subject matter jurisdiction over Plaintiff's "appeal" of the September 13, 2016 JTC letter. M.C.R. 9.203 ("Proceedings under these rules are subject to the direct and exclusive superintending control of the [Michigan] Supreme Court. No other court has jurisdiction to restrict, control, or review the orders of the master or the commission."). *See also* M.C.R. 9.224, 9.225. Moreover, the federal court does not have supervisory authority to remove and replace state court judges, although Michigan's Supreme Court does have the exclusive authority to remove or suspend. M.C.R. 7.303(A) ("The Supreme Court shall review a Judicial Tenure Commission order recommending discipline, removal, retirement, or suspension (*see* MCR 9.223 to 9.226)."). And it is the Governor's prerogative to name their replacements, unless they are replaced by the citizens through the election process. *See, e.g.*, Mich. Comp. Laws § 168.424(1) ("If a vacancy occurs in the office of circuit judge, the governor shall appoint a successor to fill the vacancy.").

While Defendant Page has argued several bases for dismissal —**(a)** Rule 12(b)(6), **(b)** Rule 12(b)(1) / Eleventh Amendment immunity, and **(c)** qualified immunity (DE 28 at 11-16)— it seems that Plaintiff's response only mentions Defendant Glenn J. Page and/or the JTC within the captions of the title page and proof of service and (DE 58 at 1, 21.) As the Court pointed out in a previous order: "Ordinarily, responses respond to *the substance* of the arguments made in the motion." (DE 35 at 3.) More to the point, assuming Count II is the basis of Plaintiff's claim against Defendant Page, I agree that "there is not even a reasonable inference that Defendant Page was involved" in the JTC's September 13, 2016 decision. (*See* DE 1 at 4, 28; DE 28 at 11; *see also* DE 61.) As to Defendant Page, Plaintiff has failed to provide "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), and/or "state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6).

**5. The Court should grant Gerald A. Whalen's motion to dismiss (DE 31).**

Assistant Attorney General Gerald A. Whalen is assigned to the Alcohol & Gambling Enforcement Division of the Department of Attorney General. *See* www.michbar.org, "Member Directory." According to Whalen, he and others "provide[ ] counsel and representation to the MLCC and other state agencies." (DE 31 at 7.) Moorski's Pub is licensed by the MLCC.[13]

It seems that Plaintiff's claim against Whalen is somehow embedded within Count VI. Plaintiff alleges that he: **(a)** spoke with Whalen's office, **(b)** was referred to the complaint enforcement division about getting forms to file a complaint or complaints against Michael Shannon Moore, **(c)** mailed police reports ranging from 2013 through 2015, but **(d)** "never rec[ei]ved MLCC complaint [f]orms or contact in writing." (DE 1 at 16 ¶ 11b) (emphasis in original). Then, with apparent reference to various incidents involving sundry individuals (including Defendant Michael Shannon Moore and Defendant Klimmer), Plaintiff alleges that "this defendant"—presumably Whalen and/or MLCC—"by proxy of carnal knowledge" lacks "the cloak of 11th Amendment immunity." (DE 1 at 16 ¶ 11b; *see also* DE 1 at 6 ¶ 6c.)

Defendant Whalen raises three bases for dismissal: **(a)** Eleventh Amendment immunity; **(b)** failure to state a claim upon which relief can be granted; and **(c)** qualified immunity. (DE 31 at 8-11; *see also* DE 59.) Plaintiff's response is difficult to follow and largely un/non-responsive, noticeably failing to identify any federal claims against Defendant Whalen without regard to the MLCC as an entity. For example:

- Plaintiff seems to suggest that Defendant Whalen is contributorily negligent and/or grossly negligent, either of which would constitute a *common law* or *state law* claim over which this Court has declined to exercise supplemental jurisdiction. (*See* DE 79, DE 58 at 3 ¶ 6.)

- **\*12** Plaintiff touches upon both the Eleventh and Fourteenth Amendments to the U.S. Constitution; however, he does not elaborate as to how either of these amendments give rise to a claim against Defendant Whalen, whose advice to the MLCC as its counsel would be privileged in any case. (*See* DE 58 at 3 ¶ 6.)

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.424 Filed 12/23/25 Page 10 of 15

Moralez v. Moore, Not Reported in Fed. Supp. (2017)
2017 WL 9802881

- After referring to Ingham County Circuit Court Judge James S. Jamo's March 22, 2017 denial of Moralez's motion for leave to appeal, which touched upon venue, Plaintiff also claims that, without a federal trial, "irreparable harm will happen to the unarmed plaintiff[,]" noting that what Defendant Whalen once described as "an ongoing feud with Defendant Michael Shannon Moore[,]" will result in "a 'Blood Vendetta'." (DE 31 at 7, DE 58 at 3 ¶ 8, DE 58 at 7-14.) Once again, the basis for a federal claim against Whalen is unclear, and, in any case—to the extent it challenges Judge Jamo's order—would appear to seek reversal of a state court decision, which is prohibited under the *Rooker-Feldman* Doctrine. *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995) ("That doctrine, a combination of the abstention and res judicata doctrines, stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court.").

- Plaintiff seems to wonder whether the Court's consideration of Defendant Whalen's May 17, 2017 motion to dismiss denies Plaintiff a right to trial by jury in federal court on a Fourteenth Amendment equal protection claim. Instead, the threshold issue posed by Defendant Whalen's motion is whether Plaintiff has stated such "a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). (DE 58 at 4 ¶ 10).

Here, as best the Court can discern, Plaintiff's complaint against Defendant Whalen takes issue with his office's alleged failure to respond to Plaintiff's request(s) for complaint forms. Noting that this cause of action refers to "the astute Attorney General Gerald Whalen['s] office," (DE 1 at 16 ¶ 11b), Plaintiff has not alleged how Defendant Whalen was personally involved or sufficiently connected to the events at issue. *See, e.g., Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) ("Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability.") (citing *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995) ); *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) ("Plaintiffs have not alleged a sufficient connection between [defendant state attorney general] and the alleged unconstitutional acts to sustain their claims against him in his official capacity."). As such, Plaintiff has failed to state a 42 U.S.C. § 1983 claim against Defendant Whalen "upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Moreover, even if personal involvement were alleged, Plaintiff fails to explain how actions such as failing to give him forms or to pursue liquor law complaints against his apparent nemesis (Defendant Michael Shannon Moore) deprived him of his civil rights.

**6. The Court should grant the City of Jackson Defendants' motion to dismiss (DE 71).**

**a. City of Jackson Officials (Burtch and Morris)**

Patrick Burtch is the City Manager, and Jennifer Morris is the Director of Neighborhood & Economic Operations. (DE 1 at 1, DE 71 at 7.) Although their names are listed within the title of Count III, as well as within the damages claim and the prayer for relief, the basis of Plaintiff's claims against these individual defendants is unclear; nonetheless, the Court discerns that Plaintiff's claim against Defendants Burtch and Morris may relate to housing code violations, namely those which were the subject of the $2,510.00 fine assessed on February 8, 2017 in an administrative proceeding, and the potential that an estate lien could result therefrom. (DE 1 at 5 ¶ 5, 21; *see also* DE 1 at 16, 23-25.)

**\*13** In addition, Plaintiff refuses to pay fees associated with "non-owner occupied" property. It seems that Plaintiff likens such fees to a "search warrant" leading to "police assault upon Mexican-American taxpayers of the United States of America...." In particular, he contends that a "County of Jackson L[ie]n Tax" against 705 Page Avenue amounts to "double jeopardy." Plaintiff claims this is unconstitutional, when "estate taxes are paid in full." Given Plaintiff's reference to Chapter 14 of the City Code of Ordinances and "code violations at 729 Page Avenue ... [,]" the Court suspects Plaintiff is referring to the July 24, 2015 notice of exterior violation, which property was the subject of ALJ Thompson's February 8, 2017 order of judgment/final order. Plaintiff believes he will continue to be "prosecuted / fined," seemingly until he is able to complete the ordered repairs. As such, Plaintiff petitions this Court to rule the above "as unconstitutional." (*See* DE 1 at 7 ¶ 7b; DE 1 at 24, 42.) Relatedly, he may be challenging the constitutionality of a state law permitting the assessment of a housing code violation and registration surtax based upon Plaintiff's dual-residence estates. (DE 1 at 9 ¶ 8f.)

The City of Jackson Defendants construe Plaintiff's claim against Defendants Burtch and Morris as based on the Double Jeopardy Clause of the Fifth Amendment, which provides that "[n]o person shall * * * be subject for the same offence to be

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.425 Filed 12/23/25 Page 11 of 15

Moralez v. Moore, Not Reported in Fed. Supp. (2017)
2017 WL 9802881

twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. However, they argue that "[t]he filing of a tax lien against Plaintiff's property in no way implicates [hi]s double jeopardy rights." (DE 71 at 12-14.)

Plaintiff's Fifth Amendment claims against Burtch and Morris should be dismissed. To be sure, Plaintiff describes himself as a "non-violent" felon. (DE 1 at 4 ¶ 4a, DE 1 at 46 ¶ 6.) However, his alleged conviction does not appear to be the subject of the instant lawsuit or relate to the fine, inspection fees, or tax lien referenced here. Moreover, the Supreme Court has observed that "jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.' " *Serfass v. United States*, 420 U.S. 377, 388 (1975) (citations omitted). Plaintiff neither alleges that "he was tried and acquitted or convicted for any offence in association with his failure to pay ..." a fine or inspection fees, nor alleges that he has been or is being tried a second time for the same offense. (DE 71 at 13.) Thus, the Fifth Amendment is not implicated by the fines assessed or potential property lien described here. Finally, if, in fact, Plaintiff intended to challenge a state law regarding dual-residence estates, it is unclear to which state law he refers. Defendants Burtch and Morris and all claims against them should be dismissed.

**b. City of Jackson Police Officers (Ganzhorn, Tinklepaugh, Klimmer and Brooker)**

Ganzhorn, Tinklepaugh (described as a supervisor), Klimmer and Brooker are Police Officers. (DE 1 at 1, 14-15; DE 71 at 7.) In Count III, Plaintiff seems to be seeking police protection (by the City of Jackson Police Department and/or the United States Marshal Service) from "assaults / arson / handgun violence" while he rectifies housing code violations at 729 Page Avenue and 705 Page Avenue. (DE 1 at 6 ¶¶ 6, 6b, DE 1 at 8 ¶ 8, DE 30-32, 34-35.) Plaintiff also claims these Defendants have executed a "government city county policy to DENY the 14TH AMENDMENT by those whose edicts or acts may fairly be said to represent official policy," which has inflicted an injury for which the government is responsible under 42 U.S.C. § 1983. (DE 1 at 8 ¶ 8d.) However, to the extent Plaintiff is attempting to bring a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), the City of Jackson is not a party to this case.

Then, in the title of Count V, Plaintiff contends these officers are liable "for police misconduct, intentional malfeasance of duty, [and] obstruction of justice ... [,]" apparently based on the officers' failure to investigate, seek criminal statement(s), and criminally charge Michael Shannon Moore. (DE 1 at 11; *see also* DE 1 at 13.) Specifically, Plaintiff alleges that:

**\*14** • Plaintiff takes issue with Tinklepaugh and Ganzhorn's actions on July 22, 2015, such as laughing at Plaintiff, obstruction of justice or "never attempted to obtain [a] Criminal Statement from Suspect Mike Moore[,]" which circumvented the ability to prosecute. (DE 1 at 12-13 ¶¶ 10e, 10f, 26-27.)

• On November 7, 2015, Klimmer refused to take a criminal statement from Michael Shannon Moore, in what Plaintiff describes as an "aggr[a]vated assault with a deadly weapon and challenge to fight armed[.]" (DE 1 at 11-12 ¶ 10d, 26.)

• On January 30, 2016, Plaintiff was awoken by beer cans and beer bottles striking his closed window. Plaintiff asked Brooker and Ganzhorn why they did not get a criminal statement regarding the events of July 22, 2015, and Ganzhorn stated that Michael Shannon Moore was not available on the date in question, which Plaintiff claims was a lie. (DE 1 at 15 ¶ 10h; *see also* DE 1 at 27.)

• It seems that, on July 23, 2016, Plaintiff reported a gun assault by Defendant Michael Shannon Moore. Plaintiff claims that, by the time Defendant Supervisor Tinklepaugh reviewed the suspect and victim's statements, Plaintiff's statement "had been abridged by Officers Mosier and Hoggard." (DE 1 at 14 ¶ 10g; *see also* DE 1 at 27 (emphasis in original).)

• Plaintiff seems to claim that, on July 31, 2016, the JPD would not come back to 729 Page Avenue; however, in the same paragraph, Plaintiff also states that Officer O'Donnell was going to handcuff Michael Shannon Moore, but Defendant Supervisor Tinklepaugh called it off and further states that Defendant Brooker refused to arrest Defendant Michael Shannon Moore three times. (DE 1 at 15-16 ¶ 10i; *see also* DE 1 at 27, DE 58 at 10.)

(DE 1 at 11-16 ¶¶ 10d-10i.)[14]

Defendants construe Plaintiff's Fourteenth Amendment claim as based upon the Due Process Clause. (*See* DE 71 at 15-18.) This seems to be the case, given that the complaint's express references to "equal protection" and "due process" seem limited to Plaintiff's claims against Judge Wilson and Clerk Riska, and the aforementioned claims against the four

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.426 Filed 12/23/25 Page 12 of 15
**Moralez v. Moore, Not Reported in Fed. Supp. (2017)**
2017 WL 9802881

defendant officers seem to take issue with their response or lack thereof to several incidents involving Defendant Michael Shannon Moore. (DE 1 at 3-4, DE 1 at 11-16 ¶¶ 10d-10i.) As to the Defendant Officers, Plaintiff has not stated a Fourteenth Amendment Due Process Clause claim upon which relief can be granted. This clause provides that a State shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. As the Supreme Court has instructed:

> ... nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

**\*15** *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Therefore, Plaintiff's claims that the Defendant Officers did not investigate or take a criminal statement or criminally charge Michael Shannon Moore, or that Tinklepaugh and/or Brooker refused to arrest Michael Shannon Moore on July 31, 2016, do not state a due process claim. Nor does Plaintiff identify a Michigan statute that gives him an "an entitlement which would enjoy due process protection against state deprivation...." *DeShaney*, 489 U.S. at 195 n.2 (referencing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).).[15] Indeed, it is a well-known hornbook principle that a police agency's failure to protect a citizen from the acts of another private citizen constitutes a mere non-feasance for which liability will not attach. *See*, D. Dobbs, *The Law of Torts*, § 272 (2000) ("The usual rule is that public entities are free from all liability for failure to provide police or fire protection, even if that failure is negligent.") (citing, *Riss v. City of New York*, 240 N.E.2d 860 (N.Y. 1968) ).

To the extent Plaintiff claims that Defendants laughed at him, apparently while responding to or investigating the July 22, 2015 incident, such an allegation would not "shock the conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience."), *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (no error in district court's dismissal of due process claims where based on a "single slap" or "rubbing of ... stomach, accompanied by a remark that could reasonably be interpreted as suggestive[.]"), *Estate of Brouhard By & Through Brouhard v. Vill. of Oxford*, 990 F. Supp. 839, 842 (E.D. Mich. 1997) ("the Court does not believe that the verbal conduct of the defendants constitutes a violation of plaintiff's 'substantive due process' rights as contemplated by the Sixth Circuit in its decision in *Lillard*....").[16]

Finally, if Plaintiff had instead intended his Fourteenth Amendment claim(s) against the City of Jackson Defendants to be based upon the Equal Protection Clause, he has not filed a timely response to challenge the City of Jackson's Defendants' due process construction. Moreover, while the Equal Protection Clause provides that the State shall not "deny to any person within its jurisdiction the equal protection of the laws[,]" U.S. Const. amend. XIV, Plaintiff does not seem to allege that the Defendant Officers' alleged failures were motivated by Plaintiff's race. True, the *introduction* to his complaint mentions "Ethnic Intimidate Hate Crime(s)." (DE 1 at 2); however, while some portions of Plaintiff's complaint refers to "racial hatred for Mexicans" and "racial discrimination," these references either describe Defendant Michael Shannon Moore's attitude or Plaintiff's youth experience, not governmental action. (DE 1 at 8 ¶ 8c, DE 1 at 12 ¶ 10e, DE 1 at 17 ¶ 12d.) Furthermore, Plaintiff's passing references to "equal police protection," "police assault upon Mexican-American taxpayers" and that he was deprived of certain things "based upon [the] Color of [his] Skin/Mexican American ... [,]" (DE 1 at 4, 7, 9), do not explain how these particular Defendants (Ganzhorn, Tinklepaugh, Klimmer and Brooker) denied him "equal protection of the laws." At best, from what can be deciphered from his pleadings, he describes an exercise of police discretion in ongoing disputes between two neighbors who have a volatile relationship, but he fails to identify how this discretion was exercised in a manner that favors one race or class over another, much less systematically. As such, I conclude that Plaintiff's complaint does not assert an equal protection claim against the Defendant Officers.[17]

**7. The Court should grant Sheridan Surveying, P.C.'s motion to dismiss (DE 75).**

**\*16** In the caption of his complaint, Plaintiff describes Sheridan Surveying, P.C., as Moore's "survey contestment." (DE 1 at 1.) By way of background, it appears that part of this lawsuit stems from Defendant Michael

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.427 Filed 12/23/25 Page 13 of 15
**Moralez v. Moore, Not Reported in Fed. Supp. (2017)**
2017 WL 9802881

Shannon Moore's alleged placement of a privacy fence between his property at 723 Page Avenue (Moorski's Pub) and 729 Page Avenue (Plaintiff's property), before which the survey line was allegedly moved onto Plaintiff's property. (DE 1 at 6-7, 10.) Then, within the title of Count IV, Plaintiff seems to allege that Sheridan Surveying, P.C. has seized land "by survey proxy," which has affected Plaintiff's legal title to the land at 720 Page Avenue. (DE 1 at 10 ¶ 9b.) Sheridan is also mentioned within Plaintiff's damages claim. (DE 1 at 21 ¶ 15.)

Defendant Sheridan argues that Plaintiff has not stated "a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6), insinuating that Plaintiff's claim against it does not provide "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), and does not satisfy the requirements of *Iqbal* and *Twombly*. (DE 75 at 10.) To a certain extent, I agree with Defendant Sheridan that Plaintiff's complaint is "indecipherable." *Id.* Still, mindful of the Supreme Court's direction to hold *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers[,]" Haines, 404 U.S. at 520, I have attempted to decipher Count IV as to Sheridan Surveying, P.C. In substance, this claim contends that Moore Company "has absconded with 300 Square Feet of Moralez Land at 729 Page Avenue[,] Jackson, MI[,]" seeming to allege that a "new survey" shows Sheridan's survey to have been inaccurate. (DE 1 at 6 ¶ 6d, 10 ¶ 9d.) Moreover, Plaintiff claims that Moore's calculations denied Plaintiff the ability to place 28 foot ladders on his property to remedy a City of Jackson Housing Code violation at 729 Page Avenue. (DE 1 at 10 ¶ 9d.)

Nonetheless, even if Plaintiff has "come to[ ] fight" for a new survey (DE 1 at 10 ¶ 9d), such a claim does not provide "factual content that allows the court to draw the reasonable inference that [Sheridan] is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In other words, even if the new survey cost Plaintiff $1,500.00, it is not clear why Sheridan Surveying, P.C. would be liable for such an amount. Moreover, to the extent Plaintiff's claim is based upon 42 U.S.C. § 1983, he does not explain how Sheridan Surveying acted "under color of" state law. 42 U.S.C. § 1983. At best, Plaintiff may be alleging some sort of a professional negligence claim against the survey company.

Without analyzing whether there is privity of contract or a professional relationship which would even give rise to a duty or standing, lack of diversity and this Court's prior order (DE 79 at 5) require its dismissal.

### E. Conclusion

For all of the reasons outlined above, the Court should grant each of the six above-described motions to dismiss filed by a total of 13 Defendants.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

**\*17** Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 9802881

---

Footnotes

| 1 | The Court Clerk issued a separate summons for the MLCC. (DE 84.) On September 21, 2017, Plaintiff filed a certificate of service of the summons and complaint upon the MLCC. (DE 87.) The MLCC appeared on October 2, 2017, at which time |

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.428 Filed 12/23/25 Page 14 of 15

**Moralez v. Moore, Not Reported in Fed. Supp. (2017)**
2017 WL 9802881

it filed its own motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (DE 88, DE 89.) To clarify, in light of the MLCC's only very recent appearance, this report only addresses *Defendant Whalen's* May 17, 2017 motion to dismiss with respect to MLCC related allegations at this juncture. (DE 31.)

2   There are several points to be made about these filings. *First*, they are, to a large extent, duplicative. (*Compare* DE 41 at 1-14, DE 58 at 1-6, 9-16; *see also* DE 58 at 7-8.) However, because the latter filed document contains some extra exhibits, it will be the one referenced herein. *Second*, if Plaintiff's citation to Fed. R. Civ. P. 6(b)(1)(A) is a request for an extension of the June 2, 2017 deadline, the Court recognizes Plaintiff's responses as timely. *Third*, although several of Defendants' motions to dismiss pre-date several of Plaintiff's motions, the Court held a hearing on June 21, 2017 and has since issued rulings on Plaintiff's motions. (*See* DEs 17, 18, 28, 31, 36-39, 63-66, 79; DE 58 at 3 ¶ 4.) Thus, the Court has not "passed" on Plaintiff's motions in issuing the instant report on Defendants' motions. *Fourth*, to the extent Plaintiff seeks more time to "brief the question of state/federal right to trial[,]" or asserts that he does not waive his right to a jury trial (DE 58 at 4 ¶¶ 10-11), he confuses this right with the issue at bar—whether Plaintiff's complaint states "a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). This case will not proceed further in this Court unless Plaintiff can survive this threshold inquiry.

3   On November 3, 2017, Plaintiff filed an "interlocutory response motion to quash [several] motions to dismiss...." (DE 96; *see also* DE 98, 100.) To the extent that this filing is intended to serve as a response to the instant motions, it is rejected as grossly untimely, and it would only be timely as a response to Defendant MLCC's October 2, 2017 motion to dismiss, which is being decided under separate cover.

4   *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

5   The Moore Defendants and Defendant Sheridan Surveying, P.C. are absolutely correct in pointing out that Plaintiff's complaint does not contain "a short and plain statement of the grounds for the court's jurisdiction ... [,]" Fed. R. Civ. P. 8(a)(1), and, standing on this technicality, seek dismissal of Plaintiff's claims on the basis of, *inter alia*, "lack of subject-matter jurisdiction[,]" Fed. R. Civ. P. 12(b)(1). (DE 17 at 8, DE 75 at 9-10.) Plaintiff responds that "[a]ll federal courts and impaneled JURORS can conduct trial upon federal mandated HATE CRIMES[,]" and "[t]he federal court has matter [sic] jurisdiction to hear plaintiff's motions and trial within Artic[le] III of the Constitution...." (DE 58 at 2 ¶ 2, 4 ¶ 9; *see also* DE 58 at 3 ¶ 5). Upon consideration of the complaint's civil cover sheet, which checks "federal question," as the basis for the Court's jurisdiction (*see* DE 1 at 48), noting the lack of diversity of citizenship amongst the parties (all appearing to be individual or corporate residents or a governmental division of the State of Michigan), and in conjunction with the Court's order declining to exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 (*see* DE 79 at 5), the Court proceeds as if its basis for jurisdiction over what remains pending in this case is 28 U.S.C. § 1331 ("Federal question").

6   Plaintiff's letter—dated August 18, 2017 and filed on August 24, 2017—lists the pending motions to dismiss, apparently to seek clarification as to which are still at issue following what Plaintiff labels the Court's "Partial Dismissal of Party Defendants[.]" (DE 82.) However, Judge Michelson's order is clear that any *state-law causes of action* are dismissed; her order did not expressly dismiss any particular defendant.

7   Plaintiff elaborates on the events of July 31, 2016 in his February 28, 2017 affidavit presumably filed in Ingham County Circuit Court Case No. 17-208-AV. (DE 58 at 9-10.)

8   Plaintiff actually cites "U.S.C.A. Const. Amend. 4[;]" however, this Count contains several references to "due process," which is language found in the Fifth and Fourteenth Amendments but is only applied to state governments through the latter. (DE 1 at 3.)

9   Within Count III, Plaintiff claims Defendant Wilson has executed a "government city county policy to DENY the 14TH AMENDMENT by those whose edicts or acts may fairly be said to represent official policy," which has inflicted an injury for which the government is responsible under 42 U.S.C. § 1983. (DE 1 at 8 ¶ 8d.) However, to the extent Plaintiff is

Case 2:25-cv-10524-SKD-APP ECF No. 51-4, PageID.429 Filed 12/23/25 Page 15 of 15

Moralez v. Moore, Not Reported in Fed. Supp. (2017)
2017 WL 9802881

10  attempting to bring a claim under *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978), the County of Jackson is not a party to this case.

10  To be sure, Plaintiff mentions Defendant Riska within Count III, claiming that she rolled her eyes at him when acting *as a court reporter* during a PPO hearing involving Michael Shannon Moore before Jackson County Circuit Court Judge John G. McBain; however, in this lawsuit, she is named as the "Chief Clerk for Fourth Circuit Court." (*Compare* DE 1 at 1, DE 1 at 8 ¶ 8c.) Also, Plaintiff does mention Defendant Riska within his claim against Defendant Sheridan Surveying (Count IV). However, she is simply mentioned as the person with whom surveys are filed. (DE 1 at 10 ¶ 9d.) As such, the Court does not interpret Counts III and IV as brought against Defendant Riska.

11  To be clear, the JTC is not a separate Defendant in this case. Although Plaintiff's damages claim and prayer for relief each consider the JTC as a Defendant (*see* DE 1 at 21), the JTC is only listed within the complaint's caption in reference to Defendant Page's title. *See* Fed. R. Civ. P. 10(a) ("Caption; Names of Parties."). Moreover, to the extent Count II cites Mich. Comp. Laws §§ 750.505, 750.478, any such claims against Defendant Page have already been addressed by the Court's order declining to exercise supplemental jurisdiction.

12  Plaintiff also claims to have first contacted the JTC in December 1992 in conjunction with a case seemingly heard by Hon. James G. Fleming (described by Plaintiff, quite unnecessarily and disrespectfully, as "the intemperate, clubfoot 5'5" Oger" [sic] ), prosecuted by Gilbert Carlson of the City Attorney's Office, and in which Plaintiff was represented by attorney Brian E. Thiede, the culmination of which was a 2 to 6 year sentence. Plaintiff then seems to refer to Judge O'Meara's December 14, 1995 order and judgment in *Morales v. Patterson, et al.*, Case No. 2:92-cv-77385-JCO (E.D. Mich.), in which the MLCC was a movant. (*See* DE 1 at 4.) However, it is not clear what either of these cases has to do with the matter at bar.

13  (*See* https://www.lara.michigan.gov/llist/.)

14  For reasons stated previously, the Court need not analyze Count V's passing references to RICO (18 U.S.C. §§ 1961-1968) or 42 U.S.C. § 1985(3) ("Depriving persons of rights or privileges") or 18 U.S.C. § 242 ("Deprivation of rights under color of law"). (*See* DE 1 at 11 ¶ 10b; *see also* DE 1 at 20.) Moreover, while Plaintiff also mentions Klimmer within Count VI; it is not clear why he did so. (*See* DE 1 at 16 ¶ 11b.) Therefore, the Court need not analyze this cause of action as to Defendant Klimmer.

15  Within the introduction to his complaint, Plaintiff cites Mich. Comp. Laws § 600.2950a ("Personal protection orders; stalking or aggravated stalking"), M.C.R. 3.705 ("ISSUANCE OF PERSONAL PROTECTION ORDERS"), and RULE 3.706 ("ORDERS"), but this string citation, alone, does not present an entitlement argument.

16  In a similar vein, as referenced earlier, Plaintiff's allegation that Defendant Riska rolled her eyes at him when acting as a court reporter during a PPO hearing can hardly be described as "shocking the conscience." (DE 1 at 8 ¶ 8c.)

17  Plaintiff also claims that, as the owner of 729 Page Avenue, he has a "right of access"—presumably to the 723 Page Avenue parking lot or a road / alley / street / sidewalk—in order to complete City of Jackson ordered repairs to 729 Page Avenue. (*See* DE 1 at 9 ¶ 8h (Count III); *see also* DE 1 at 6 ¶ 6b.) However, to the extent Plaintiff is seeking an order permitting him access to Michael Shannon Moore's property in order to perform these repairs (DE 1 at 6 ¶ 6d), the appropriate arbiter of such relief is state court, and I construe any such claim as having been dismissed by this Court's prior order. (DE 79 at 5.).

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.  14