# EXHIBIT #5

Case 2:25-cv-10524-SKD-APP ECF No. 51-5, PageID.431 Filed 12/23/25 Page 2 of 6

Moralez v. Moore, Not Reported in Fed. Supp. (2018)

2018 WL 1406842
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Abelardo MORALEZ, Plaintiff,
v.
Michael Shannon MOORE, et al., Defendant.

Case No. 17-10567
|
Signed 03/21/2018

**Attorneys and Law Firms**

Abelardo Moralez, Jackson, MI, pro se.

Brendon R. Beer, Abbott, Thomson, Mauldin, Parker & Beer, PLC, Jackson, MI, Jason A. Geissler, Michigan Attorney General, Patrick A. Aseltyne, Victoria L. Convertino, Johnson, Rosati, Schultz & Joppich PC, Felepe H. Hall, Elizabeth R. Husa Briggs, MI Dept. of Attorney General, Lansing, MI, Audrey J. Forbush, Rhonda R. Stowers, Plunkett & Cooney, Flint, MI, for Defendant.

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [102] AND GRANTING MOTIONS TO DISMISS [17, 18, 28, 31, 71, 75]**

LAURIE J. MICHELSON, U.S. DISTRICT JUDGE

*1 Abelardo Moralez keeps two homes. During the winter, Moralez says he lives at 729 Page Avenue, Jackson, Michigan. (R. 1, PID 5.) Come summer, he moves down the street to 705 Page Avenue. (*Id.*) Whatever the season, Moralez spends all year as a neighbor to Keeder's Show Bar (R. 1, PID 12) and Mooreski's Pub (R. PID 18). Moralez says Mooreski's Pub is not the best neighbor and a chief cause of this litigation.

Moralez brought suit against thirteen defendants, and the Court referred all pretrial matters to Magistrate Judge Anthony Patti. All Defendants moved to dismiss and Magistrate Judge Patti issued a Report and Recommendation addressing twelve of the thirteen. He recommends granting the motions to dismiss. (R. 102, PID 748.) Moralez objected to the Report (R. 109), and the Court now turns to those objections.

I.

Starting in 2013, Moralez says Mooreski's patrons along with Mooreski's owners—Michael and Robert Moore—began to repeatedly harass him. (R. 1, PID 11–16.) The Moores, in particular, called Moralez a number of racial epithets, threatened to sexually assault him, threatened his life, and threw rocks or beer bottles at him. (R 1, PID 7, 11–16.) By 2015, the Moores had progressed to "molesting" Moralez in public places. (R. 1, PID 11.)

Compounding the problem, Moralez says officers from the Jackson Police Department did nothing to stop the assaults. (*Id.*) Jackson police officers refused to conduct a criminal investigation into Moore and refused to arrest him despite Moralez's many complaints. (R. 1, PID 15–16.) The police response was so ineffectual, Moralez lodged complaints with the Michigan Attorney General's Office. (R. 1, PID 16.) Moralez also complained to the Michigan Liquor Control Commission about Mooreski's Pub. (*Id.*)

In the summer of 2013, Moralez claims the assaults turned destructive. On July 5, 2013, Moralez called Jackson Police to report an attempted arson on his winter home. (R. 1, PID 18.) Moralez says he watched from 705 Page Avenue as Michael Moore, along with others, threw rocks and fireworks through the front window at 729 Page Avenue. (*Id.*) Police reports attached to the complaint confirm that someone tossed a rock and firework through the home's window, starting a small fire. (R. 1, PID 37–40.) And one night in 2015, after Moralez called police to report that Mooreski's Pub was serving liquor after hours, Moore and one of his bartenders threw a brick at 729 Page Avenue. (R. 1, PID 11.)

So in December 2015, Moralez went to court to obtain a personal protection order against Michael Moore. (R. 1, PID 3.) But the request was denied. (*Id.*) Moralez claims a state judge issued an order preventing the clerk from issuing the protective order. The judge's order to the clerk, along with the clerk's denial of a protective order, led Moralez to petition Michigan's Judicial Tenure Commission to investigate the judge and the clerk. (R. 1, PID 28.) ya The investigation did not uncover any wrongdoing. (R. 1, PID 28.)

Around the same time as the alleged assaults, Moralez says Michael and Robert Moore started filing false complaints about 729 Page Avenue. (R. 1, PID 5.) Moralez thinks

Case 2:25-cv-10524-SKD-APP ECF No. 51-5, PageID.432 Filed 12/23/25 Page 3 of 6

Moralez v. Moore, Not Reported in Fed. Supp. (2018)

the Moores filed the complaints to force Moralez to move away from the neighborhood. (R. 1, PID 5.) The complaints eventually led Jackson city inspectors to issue a blight citation for 729 Page Avenue. (R. 1, PID 42–44.) Moralez thinks the Moores bribed the city inspectors. (R. 1, PID 5.)

**\*2** The citations brought Moralez to court a second time, now before a judge in Jackson's Administrative Hearings Bureau. (R. 1, PID 24.) Moralez demanded a jury trial because he claimed the citations were all the result of Moore's conspiratorial devices. (R. 1, PID 5.) The court denied Moralez's request for a jury trial and fined him $2,510 for the blight violation. (R. 1, PID 24.) A court order required Moralez to fix the house by July 2017. (*Id.*)

To fix the house, 729 Page Avenue needed extensive repairs to the chimney, roof, and exterior. (R. 1, PID 5–10.) Moralez completed the exterior repairs (R. 1, PID 8) and in early 2017 received a permit to complete the chimney and roofing repairs (R. 1, PID 30, 31–35). But before Moralez could fix the roof, the Moores conducted a survey, possibly to build a fence around their property. (R. 1, PID 10.) After the surveyors left, Moralez says the Moores moved the surveyor's stakes 300 feet onto Moralez's property, stealing his land. (*Id.*) As a result, Moralez could not use a ladder large enough to reach 729 Page Avenue's roof. (*Id.*) The Moores also prevented Moralez's contractors from parking in Mooreski's lot. (R. 1, PID 9.) In the end, Moralez was unable to fix his roof. (R. 1, PID 11.)

All of the above led Moralez to file suit in federal court, soon after the Jackson administrative court fined Moralez for the blight violation. (R. 1.) Moralez names thirteen defendants. (R. 1, PID 1.) Primarily, Moralez directs his claims at the Moores. But he also includes the state judge and clerk he says improperly denied a personal protective order, Michigan's Judicial Tenure Commission, an assistant attorney general, the Michigan Liquor Control Commission, Jackson Police Officers, Jackson City Officials, and a surveying company. (*Id.*)

Moralez's complaint is difficult to decipher. In the main, Moralez says he brings suit under 42 U.S.C. § 1983, claiming that Jackson City Officials, police officers, and judges conspired with the Moores to violate Moralez's constitutional rights. (R. 1, PID 2.) Moralez's complaint also includes state-law claims. (*See, e.g.*, R. 1, PID 2 (alleging the Moores violated Michigan's "Stalker Statute").)

The Court referred all pretrial matters to Magistrate Judge Anthony Patti. (R. 3.) Subsequently, Moralez filed two motions for injunctive relief (R. 37, 38), which Magistrate Judge Patti recommended denying (R. 63). Over Moralez's objections (R. 63), the Court adopted Magistrate Judge Patti's recommendation (R. 79), and declined to exercise supplemental jurisdiction over Moralez's state-law claims (R. 79, PID 566). As a result, Moralez was left with counts primarily alleging § 1983 and § 1985 violations along with counts citing to federal, criminal statutes. (*See* R. 102, PID 754.)

All Defendants moved to dismiss Moralez's complaint. (R. 17, 18, 28, 31, 71, 75, 89.) Moralez responded to some of the motions, but not all (R. 41, 58, 100), and instead filed a motion to disqualify Magistrate Judge Patti (R. 99). Magistrate Judge Patti denied Moralez's request to disqualify him (R. 101), and issued a Report and Recommendation addressing six of the motions to dismiss (R. 17, 18, 28, 31, 71, 75). Magistrate Judge Patti recommended granting all of them. (R. 102, PID 748.) (The seventh motion to dismiss, filed by the Michigan Liquor Commission (R. 89), is not part of the Report and Recommendation and thus will be addressed at a later date.)

Moralez objects to Magistrate Judge Patti's Report and Recommendation. (R. 109, 110.) Moralez appears to raise thirteen objections, and like his complaint, they are difficult to discern. (R. 102, PID 809.) The bulk of Moralez's objections concern what he views as an unjustified referral of his case to the magistrate judge. (*See* R. 1, PID 804–05.) The Court now turns to resolving the objections, and for the reasons that follow, the Court adopts Magistrate Judge Patti's recommendations.

## II.

**\*3** Because Moralez has consistently voiced his objection to the referral of his case to Magistrate Judge Patti, the Court will explain the referral process in a bit more detail than usual.

Congress has empowered district judges to "designate a magistrate judge to hear and determine" the vast majority of "pretrial matter[s]" in both criminal and civil cases. 28 U.S.C. § 636(b)(1)(A) ("Notwithstanding any provision of law to the contrary[,] ... a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss

Case 2:25-cv-10524-SKD-APP ECF No. 51-5, PageID.433 Filed 12/23/25 Page 4 of 6

Moralez v. Moore, Not Reported in Fed. Supp. (2018)

or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action."); *see also* Fed. R. Civ. P. 72(b). A district judge is to reconsider such a determination by a magistrate judge only where "it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(3).

Congress also has empowered district judges to designate a magistrate judge to conduct hearings on, and to prepare "proposed findings of fact and recommendations"—i.e., a "report and recommendation"—for the disposition of various dispositive motions, such as a motion to dismiss or a motion for summary judgment. 28 U.S.C. § 636(b)(1)(B) ("Notwithstanding any provision of law to the contrary[,] ... a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for post[-]trial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement."); *see also* Fed. R. Civ. P. 72(b). If a party objects to a magistrate judge's report and recommendation, it is to be reviewed *de novo* by the district judge. 28 U.S.C. § 636(b)(1)(C). When conducting this *de novo* (or new) review, the district court may "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate with instructions." *See* Massey v. City of Ferndale, 7 F.3d 506, 509 n.8 (6th Cir. 1993).

Finally, "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).

Thus, Moralez's general objections to the role of the Magistrate Judge are unfounded.

In this case, Magistrate Judge Patti's Report addresses six dispositive motions. So this Court conducts an entirely new review of only the findings or recommendations to which Moralez objects. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Thomas v. Arn, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.")

### III.

#### A.

**\*4** Even giving Moralez the benefit of the doubt, most of his objections are nonresponsive to the magistrate judge's Report. As mentioned, Moralez thinks the Court should not have referred this case to the magistrate judge. On top of that, Moralez believes that a number of entities, including this Court and the magistrate judge, conspired to deny him his right to a jury trial. (*See Id.* at 805, 806, 808.) At other times, Moralez objects to the Court's apparent bias in favor of dismissing the case (*id.* at 805), the Court's order declining to exercise supplemental jurisdiction over the state claims (*id.* at 808), and the order denying his motions for injunctive relief (*id.* at 805). As these objections do not point to any alleged errors in the present Report, they provide no basis for rejecting it.

#### B.

Yet liberally construing his objections, Moralez appears to challenge the dismissal of all claims against Assistant Attorney General Gerald Whalen, the Michigan Liquor Commission, and Michael Moore. (*Id.* at 807.) However, the Court will overrule this objection.

For one, the Report does not dismiss the Michigan Liquor Commission. (R. 102, PID 748.) The Commission's motion to dismiss (R. 89) remains pending.

As for Whalen, Moralez appears to allege that Whalen was somehow involved in the Michigan Liquor Control Commission's failure to investigate Moralez's issues with Moore. (R. 1, PID 16.) But Moralez's complaint says only that he called Whalen's office and they referred him to the Attorney General's complaint division. (R. 1, PID 16.) It may be Moralez brings a § 1983 claim against Whalen, but to properly plead one, Moralez needs to allege a violation of a constitutional right. *See* Moldowan v. City of Warren, 578 F.3d 351, 376 (6th Cir. 2009). As Moralez has not explained how referring his call to the complaint division gives rise to

a constitutional violation, Moralez has not properly pled a § 1983 claim against Whalen. So the Court overrules Moralez's objection and agrees with the Report's recommendation to dismiss Whalen.

Moralez's objection to the Report's recommended dismissal of all claims against Moore requires a bit more analysis. Moralez brings three claims against the bar owner: a § 1983 claim for numerous instances of bullying, assault, and threatening behavior; a claim under the Hobbs Act; and an action for civil remedies pursuant to the RICO statute.

Starting with the § 1983 claim, Moore is a private party. Because "[a] plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct," *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003), Moralez needs to plead that Moore was acting under color of state law. As Moralez's complaint offers no plausible basis for finding that Moore ever acted "under color of law," *see Moldowan*, 578 F.3d at 399, the Court, having conducted its own *de novo* analysis, reaches the same conclusion as Magistrate Judge Patti. Moralez's § 1983 claim against Moore will be dismissed.

Moving on to the Hobbs Act claim, it fails because the Hobbs Act is a criminal statute. And a private party like Moralez cannot bring an action under the Hobbs Act against another private individual like Moore. *See Stanard v. Nygren*, 658 F.3d 792, 794 (7th Cir. 2011); *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 408–09 (8th Cir. 1999).

Finally, Moralez's complaint does not properly plead a civil RICO claim. Moralez's complaint does nothing more than cite to the RICO statutes, 18 U.S.C. §§ 1961 *et seq.* (R. 1, PID 18.) It offers no plausible, factual basis for any civil RICO claim, and bare-bones legal conclusions surrounded by "threadbare recitals of the elements of a cause of action" cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the Court overrules Moralez's objection and adopts the Report's recommendation to dismiss all claims against Moore.

C.

**\*5** It appears that Moralez also objects to the Report's characterization of his claims against the Jackson City Officials. (R. 109, PID 809.) Moralez seems to argue the officials violated due process when they denied Moralez the right to a jury trial in the administrative proceeding culminating in a $2,510 fine. (*Id.*)

But Magistrate Judge Patti's Report did not read Moralez's complaint to contain a due process claim against the Jackson City Officials. Instead, the Report read Moralez's complaint to bring a Fifth Amendment, double-jeopardy claim against the officials. (R. 102, PID 777.) And the officials read the complaint that way too. (R. 71.) Accordingly, the Report dismissed the double-jeopardy claim because double jeopardy is inapplicable to civil fines. (R. 102, PID 778–79.)

Having looked at the complaint anew, the Court reaches the same conclusion. Even given the most liberal construction, Moralez's complaint does not plead a due process claim against the Jackson City Officials. To be sure, Moralez does plead due process claims against Jackson police officers and a state court judge (but they, too, do not survive the officers' and judge's motion to dismiss). (*See* R. 1, PID 8, 11; R. 102, PID 769, 781.) However, with respect to the Jackson City Officials, Moralez alleges that the blight violation and fine amount to a " 'search warrant' leading to police assault upon Mexican-American taxpayers." (R. 1, PID 7.) In the alternative, Moralez alleges the fine violates double jeopardy because he already paid his "estate taxes in full." (*Id.*) Yet Supreme Court precedent establishes that the double-jeopardy clause only applies to criminal trials and criminal convictions. *See Serfass v. United States*, 420 U.S. 377, 388 (1975). As Moralez challenges the imposition of a civil fine, Magistrate Judge Patti correctly dismissed Moralez's double-jeopardy claim against the Jackson City Officials.

IV.

For the foregoing reasons, the Court adopts the Report and Recommendation. (R. 102.) Accordingly, the Court grants the six motions to dismiss addressed therein. (R. 17, 18, 28, 31, 71, 75.)

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1406842

Case 2:25-cv-10524-SKD-APP ECF No. 51-5, PageID.435 Filed 12/23/25 Page 6 of 6

**Moralez v. Moore, Not Reported in Fed. Supp. (2018)**

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.