UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ISAAC ANTHONY THOMAS,

Plaintiff,

v.

GENESEE COUNTY SHERIFF'S DEPARTMENT, et al.,

Defendants.
_______________________________________/

Case No. 2:25-cv-10524

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 49, 51); DENYING WHALEY DEFENDANTS' MOTION TO DISMISS (ECF No. 48); AND GRANTING PLAINTIFF'S MOTION FOR AN EXTENSION OF TIME TO EFFECT SERVICE UNDER FED. R. CIV. P. 4(M) AND MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (ECF No. 63)**

Plaintiff Issac Thomas spent much of his life in foster care. Thomas alleges that he was the victim of physical and sexual assault while living at the Whaley Children's Center ("Whaley"), and that Whaley and its employees were aware of the abuse but refused to help him. In 2022, years after he was emancipated, he reported the abuse to the Genesee County Sheriff's Department, where he was rebuffed. The Sheriff's Department refused to open an investigation and instead, allegedly informed Whaley of Thomas's report.

Thomas now sues Whaley and various employees; the Genesee County Sheriff's Department ("GCSD") and various employees; the Michigan Department

of Health and Human Services ("MDHHS"); and a slew of entities related to another foster care placement, Lakeside Academy, in which he was also allegedly abused. Both the Whaley Defendants and the GCSD Defendants have moved to dismiss Thomas's claims against them.

On August 6, 2026, this Court entered an order directing Thomas to show cause as to why the remaining Defendants should not be dismissed for failure to accomplish service on them. Thomas timely responded, moved for leave to file a Third Amended Complaint to name the proper defendants, and asked for an extension of time to serve those defendants.

For the reasons stated below, the motions to dismiss will be granted in part, Thomas will be permitted to file a Third Amended Complaint, and he will be provided a short extension of time to accomplish service.

## I. BACKGROUND

Plaintiff Isaac Thomas was born in 2002 and first entered the State of Michigan's custody in 2008.[1] ECF No. 46 at PageID.266. Thomas was placed at Whaley Children's Center, in Flint, Michigan, in 2016. *Id.* at PageID.268. The care at Whaley was "chaotic and neglectful," and children were deprived of "food, hygiene, and family contact." *Id.* at PageID.269–270.

[1] For purposes of these motions, this Court accepts the Amended Complaint's well-pleaded factual allegations as true and draws all reasonable inferences in favor of Thomas. *See, e.g.*, *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Thomas alleges that while he lived at Whaley, a staff member named Dante Jennings subjected him to "severe abuse." ECF No. 46 at PageID.268. Defendant Jennings secretly fed Thomas unidentified "feel good pills" at bedtime and then sexually molested Thomas. *Id.*

Thomas was also subject to physical violence at Jennings's hand, including being forcibly restrained when trying to flee an "escalated sexual assault" in Thomas's bedroom. ECF No. 46 at PageID.268. Thomas was able to escape and reach an administration building. *Id.* There, he sought help from Defendant Mindy Williams, Whaley's CEO and Jennings's supervisor, who "looked directly at [Thomas], shook her head in denial, and refused him entry or aid." *Id.* at PageID.269, 271. Jennings then caught up to Thomas, "slam[ed] his head into a brick wall," "thr[ew] him to the ground and pound[ed] his head on the pavement" before sexually assaulting him again. *Id.* at PageID.269. Thomas resisted, injuring Jennings in the struggle. *Id.*

Thomas attempted to report the abuse to Whaley staff, the MDHHS, and his court-appointed special advocate, Ken Foyder. ECF No. 46 at PageID.269. Foyder "raised alarms" about Thomas's mistreatment in court. *Id.* In retaliation, "Whaley staff successfully moved to have Foyder removed from Mr. Thomas's case." *Id.*

Whaley retaliated in other ways, too. Thomas received approximately 13 misdemeanor assault charges, which were dismissed as retaliatory. ECF No. 46 at

PageID.269. Thomas was transferred to another foster care facility, apparently because of this retaliation. *Id.* And despite the allegations of abuse, Jennings and other abusers were permitted to remain in contact with children. *Id.*

In early 2018, MDHHS transferred Thomas to Lakeside Academy ("Lakeside"), a residential treatment center in Kalamazoo, Michigan. ECF No. 46 at PageID.266. Lakeside is operated by a chain of corporate entities including Defendants Sequel Youth Services of Michigan, LLC; Sequel TSI Holdings, LLC; Sequel Academy Holdings, LLC; and Sequel Youth Services, LLC. ECF No. 46 at PageID.265–66. Thomas alleges that he was physically and sexually assaulted while at Lakeside by three unidentified Defendants.[2] ECF No. 46 at PageID.267–68.

In May 2022, Thomas—by then emancipated—attempted to report his abuse to the GCSD. ECF No. 46 at PageID.270. The Sheriff's Department initially acknowledged the seriousness of the report and indicated that the allegations may be referred to a special investigative team. *Id.* Shortly thereafter, though, Defendant Undersheriff Michael Tocarchick escorted Thomas out of the building, called him "annoying," and stated, "[y]ou're going to get yourself in trouble." *Id.* He refused to file a report or assign a case number. *Id.* Thomas tried to reach Defendant Sheriff Chris Swanson directly, but Swanson stated he would not investigate or review

---

[2] For convenience, this Court refers to Lakeside Academy, the Sequel chain of entities, and the John Doe Defendants collectively as the "Lakeside Defendants."

Thomas's evidence. *Id.* at PageID.270–271. Neither Tocarchick nor Swanson notified MDHHS of the allegations. *Id.*

Within two weeks of his encounter with the GCSD, Williams contacted Thomas—then approximately 20 years old—and asked him to attend a meeting. ECF No. 46 at PageID.271. Based on the timing of the meeting, Thomas alleges that the GCSD contacted Whaley about Thomas's report. *Id.* at PageID.272. At the meeting, Thomas reiterated his allegations, but the Whaley Defendants dismissed them without action. *Id.* at PageID.271. At a second meeting, Whaley administrators admitted that they witnessed Thomas injured and bleeding but did not contact law enforcement. *Id.* at PageID.272. Whaley administrators also "confirmed institutional knowledge of the abuse and a deliberate decision not to report it." *Id.*

Thomas initially filed a *pro se* complaint in February 2025. ECF No. 1. Then, through counsel, he filed the operative Amended Complaint on October 26, 2025, bringing 14 claims against Whaley Children's Center, Williams, Jennings (together, the "Whaley Defendants"); GCSD, Swanson, and Tocarchick (together, the "GCSD Defendants"); MDHHS, and the Lakeside Defendants as follows:

| Count | Claim | Defendants |
|---|---|---|
| 1 | Sexual Assault and Battery | Jennings and John Does 1–3 individually; Whaley and Lakeside Defendants vicariously |
| 2 | Failure to Protect | All |
| 3 | State-Created Danger | All |

| | | |
|---|---|---|
| 4 | First Amendment Retaliation | Whaley; Williams; Lakeside; Sequel Defendants; John Does 1–3; GCSD; Swanson; and Tocarchick |
| 5 | Denial of Access to Courts | All |
| 6 | Monell Municipal Liability | GCSD |
| 7 | Breach of Fiduciary Duty | MDHHS; Whaley; Lakeside; all Sequel entities; and John Does 1–3 |
| 8 | Child Sexual Abuse | All |
| 9 | Michigan Crime Victims' Rights Act | All |
| 10 | Obstruction of Justice | All |
| 11 | Gross Negligence | All |
| 12 | Negligence, including Negligent Hiring, Supervision, Training, and Retention | All |
| 13 | Negligence and Breach of Statutory Duty | All |
| 14 | Negligence Per Se | All |

ECF No. 46; *see also* ECF No. 45. To date, this Amended Complaint has not been served on the Lakeside Defendants or MDHHS. *See* ECF No. 60. The GCSD Defendants and the Whaley Defendants now move to dismiss Thomas's claims against them. ECF Nos. 49, 51.

## II. LEGAL STANDARD

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, the court accepts the

complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). In short, a complaint must contain facts sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570 (2007). Otherwise, the Court must grant the motion to dismiss. *See id.*

## III. DISCUSSION

### A. The Whaley Defendants' Motion to Dismiss

#### *1. Statute of Limitations*

The Whaley Defendants first argue that Michigan's three-year tort statute of limitations bars all of Thomas's claims. *See* ECF No. 49 at PageID.353–56. In response, Thomas argues that he may utilize Michigan's child sexual abuse savings provision, MICH. COMP. LAWS § 600.5851b(1), which permits claims arising out of allegedly criminal sexual conduct committed while the complainant is a minor

brought before the complainant's 28th birthday. *See* ECF No. 52 at PageID.446–449. The Whaley Defendants counter that this savings provision requires sexual penetration, not just sexual contact. *See* ECF No. 49 at PageID.354. This Court finds that Thomas's claims are timely.

Under Michigan law, a cause of action generally accrues "at the time the wrong upon which the claim is based was done." MICH. COMP. LAWS § 600.5827. Thomas alleges the Whaley Defendants injured him in 2016, but he did not file suit until 2025. This was far beyond the usual three-year statute of limitations for personal injury and § 1983 claims, MICH. COMP. LAWS § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986), and the two-year statute of limitations for assault and battery, MICH. COMP. LAWS § 600.5805(3).

However, MICH. COMP. LAWS § 600.5851b extends the statute of limitations for actions "to recover damages sustained because of the criminal sexual conduct" brought by "an individual who, while a minor, is the victim of criminal sexual conduct." MICH. COMP. LAWS § 600.5851b(1). A plaintiff may bring such claims until his 28th birthday, or three years after discovering the claim, whichever is later. *Id.* The statute of limitations defines "criminal sexual conduct" as conduct prohibited under several statutes. *See* MICH. COMP. LAWS §§ 600.5851b(5)(b); 600.5805(16)(b).

Most relevant here, under MICH. COMP. LAWS § 750.520c, "[a] person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and . . . [t]hat other person is at least 13 but less than 16 years of age and . . . [t]he actor is an employee . . . of a child care organization, or a person licensed to operate a foster family home or a foster family group home in which that other person is a resident and the sexual contact occurs during the period of that other person's residency." MICH. COMP. LAWS § 750.520c(1)(b)(*vi*). And MICH. COMP. LAWS § 750.520e makes it a crime to engage in sexual contact when "[f]orce or coercion is used to accomplish the sexual contact." MICH. COMP. LAWS § 750.520e(b). In both statutes, "sexual contact" is defined as "the intentional touching of the victim's or actor's intimate parts . . . if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose." MICH. COMP. LAWS § 750.520a(q). Under these statutes, and contrary to the Whaley Defendants' assertion, "criminal sexual conduct," as defined by Michigan law, does not require an allegation of sexual penetration.[3]

Here, Thomas alleges that Jennings repeatedly sexually assaulted him

---

[3] The Whaley Defendants do not argue that any of Thomas's claims do *not* arise out of the allegedly criminal sexual conduct. Therefore, the Court will assume without deciding that all of Thomas's claims are subject to the same statute of limitations analysis.

between 2016 and 2018. *See* ECF No. 46 at PageID.268–269. At that time, Thomas was between 14 and 16, Jennings was a Whaley employee, and Jennings allegedly used force to hold Thomas down and molested him.[4] *See id*. Therefore, Thomas's claims fall under the savings provision via either § 750.520c or § 750.520e. In turn, he may bring claims arising out of this allegedly criminal sexual conduct until his 28th birthday. MICH. COMP. LAWS § 600.5851b. Because Thomas filed suit well before his 28th birthday—which will be sometime in 2030—his claims are timely. *See id.*

*2. State Actors*

Next, the Whaley Defendants argue that they are private, rather than state, actors—meaning they are not subject to § 1983 liability. *See* ECF No. 49 at PageID.356–57. In response, Thomas argues that all children in state foster care are effectively in state custody. *See* ECF No. 52 at PageID.455–61. This Court finds that Whaley is a private actor, and in turn, the Whaley Defendants are not subject to liability under § 1983.

"Section 1983 provides a remedy against any person acting under color of state law for 'deprivation of any rights, privileges, or immunities secured by the

[4] The Whaley Defendants incredibly argue that the allegation Jennings "molested" Thomas is insufficient to plead a claim of criminal sexual conduct. *See* ECF No. 61 at PageID.556. They cite no authority for this proposition, and this Court finds the allegation sufficient, particularly when read in the light most favorable to Thomas.

Constitution and laws' of the United States." *Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 752 (6th Cir. 2020) (quoting 42 U.S.C. § 1983). "Only claims against 'state actors' are eligible for relief under the statute." *Id.* (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 940 (1982)).

A private entity, like Whaley Children's Center, may "qualif[y] as a state actor" if the entity "serve[s] a public function traditionally handled just by the State." *Howell*, 976 F.3d at 752. In *Howell*, the Sixth Circuit recognized that foster homes generally "do not count as state actors," because foster homes have "no power to remove children and place them under appropriate care or in juvenile correctional facilities—the kinds of things state actors traditionally may do." *Id.* at 753.

However, the Sixth Circuit has also held that allegations that a foster care home operates like a juvenile incarceration facility do give rise to a plausible inference that the foster home is a state actor. *Nugent v. Spectrum Juv. Just. Servs.*, 72 F.4th 135, 143 (6th Cir. 2023). In *Nugent*, the plaintiffs alleged that the at-issue facility "had influence and control over how long a child was detained at the facilities"; that children were constantly supervised; that their movements were restricted, including an inability to leave the facility absent a court order; that the facility was required to "prevent the children from escaping and to contact local law enforcement if escape should occur"; and at bottom, that the facility "fulfilled the public function of juvenile incarceration." *Id.* at 143 (internal quotation marks

omitted). Together, the Sixth Circuit held, the plaintiff alleged that the facility was endowed "with legal authority to exercise control over juveniles under court-ordered confinement," rendering it a state actor. *Id.*

Here, Thomas argues that the Whaley Children's Center is more akin to the facility in *Nugent* than the typical foster home at issue in *Howell*, relying on the following allegations: (1) Whaley is funded by the state, ECF No. 46 at PageID.264; (2) it has a contractual relationship with MDHHS, *id.*; (3) Thomas was in the legal custody of MDHHS when placed at Whaley, *id.* at PageID.266, 268; (4) there was a "culture of intimidation" at Whaley, with children deprived "of food, hygiene, and family contact" and threatened with the loss of "basic privileges unless they complied in silence with retaliatory discipline," *id.* at PageID.269–70.

While these allegations are troubling, they do not give rise to a plausible inference that Whaley is exercising such control over its residents as to act as a juvenile detention facility. Thomas does not allege that Whaley restrained his movements; that he needed a court order to leave;[5] that he was constantly supervised or his movements restricted; or that Whaley was effectively a carceral facility, like the facility at issue in *Nugent*. While this Court recognizes that Thomas alleges dismal—even harmful—conditions, the allegations, at most, claim that Whaley is a

[5] Thomas does allege that at one point, a court ordered his transfer out of Whaley's custody. *See* ECF No. 46 at PageID.269. However, he does not allege a court order was *required* for him to leave the facility.

gravely mismanaged foster care home. A foster care home is, as noted above, not a state actor. *Howell*, 976 F.3d at 754. In turn, the Whaley Defendants may not be subject to liability under § 1983. *See Howell*, 976 F.3d at 752. Counts 2, 3, 4, and 5 will therefore be dismissed as to the Whaley Defendants.

*3. Judicial Immunity*

Finally, the Whaley Defendants argue they are entitled to quasi-judicial immunity on the remaining claims,[6] as child-caring institutions that are "intimately related to the judicial process." ECF No. 49 at PageID.358 (quoting *Kolley v. Adult Protective Servs*., 786 F. Supp. 2d 1277, 1298 (E.D. Mich. 2011)). Thomas objects, arguing that the Whaley Defendants were not involved with the judicial process. *See* ECF No. 52 at PageID.461–63. This Court finds that the Whaley Defendants were not involved with the judicial process and are not entitled to judicial immunity.

Certain actors are entitled to "absolute quasi-judicial immunity for performing job duties that are a part of the judicial process." *Kolley*, 786 F. Supp. 2d at 1298. In *Kolley*, the court found that a guardian ad litem, appointed by a probate court and tasked with drafting a report and providing testimony, was entitled to quasi-judicial immunity. *Id.* at 1299. Similarly, Michigan Courts have granted social workers absolute immunity for litigation "arising out of their work as advisors and agents of

[6] The Whaley Defendants also assert they are entitled to qualified immunity, *see* ECF No. 49 at PageID.358–59, but private actors are not entitled to qualified immunity, *see, e.g.*, *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 390 (6th Cir. 2020).

the . . . court." *Beauford v. Lewis*, 711 N.W.2d 783, 786 (Mich. Ct. App. 2005); *see also Martin v. Child.'s Aid Soc.*, 544 N.W.2d 651, 655 (Mich. Ct. App. 1996).

However, the Whaley Defendants cite no authority in support of their position that "Courts have consistently held that . . . foster-care agencies and child-care institutions" are entitled to the same immunity. *See* ECF No. 49 at PageID.358. This Court is unaware of any such precedent. While a foster-care agency might bear some general similarity to a social worker, "[i]mmunity rests not on status or title but on the function performed." *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989). Thomas does not allege that the Whaley Defendants were appointed by any court, involved in any placement decisions, provided any testimony or reports, or advised any court at any time. Accordingly, this Court finds they did not perform any duties "intimately related to the judicial process," so they are not entitled to quasi-judicial immunity. *See, e.g.*, *Thomas v. St. Vincent & Sarah Fisher Ctr.*, No. 03-73002, 2006 WL 2418974, at *7 (E.D. Mich. Aug. 21, 2006) (finding social workers' ongoing supervision of a child and their failure to report abuse was not "intimately related to a judicial proceeding").

The Whaley Defendants' Motion to Dismiss, ECF No. 49,[7] will therefore be granted in part. Counts 2, 3, 4, and 5 will be dismissed against these Defendants.

---

[7] ECF No. 48 appears to be the Whaley Defendants' motion to dismiss without the accompanying brief. But ECF No. 49 is the corrected filing, so ECF No. 48 will be denied as moot.

**B. The GCSD Defendants' Motion to Dismiss**

*1. Qualified immunity*

The GCSD Defendants[8] argue they are entitled to qualified immunity on all Thomas's § 1983 claims because the claims all stem from the denial to investigate his allegation, which is not a clearly established right. *See* ECF No. 51 at PageID.381–87. Thomas responds that each claim pleads a clearly established violation of his constitutional rights. *See* ECF No. 52 at PageID.461–63. This Court finds that Thomas has not pleaded claims for failure to protect, state created danger, or access to the Courts. Therefore, Swanson and Tocarchick are entitled to qualified immunity on those claims. However, Thomas has sufficiently pleaded his retaliation claim such that Swanson and Tocarchick are not entitled to qualified immunity on Count 4.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To determine whether a government official is entitled to qualified

[8] Although the motion refers to all Genesee County Defendants, the County itself is not entitled to qualified immunity. *See Moldowan v. City of Warren*, 578 F.3d 351, 392–93 (6th Cir. 2009) ("[Q]ualified immunity is unavailable in § 1983 claims against a municipality.").

immunity, this Court must ask two questions: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010) (citation omitted). The Court may consider these questions in either order. *Pearson*, 555 U.S. at 236.

a. Count 2: Failure to Protect

"[A] state has no constitutional duty to protect individuals who are not in its custody." *Jane Doe v. Jackson Local Sch. Dist. Bd. of Ed.*, 954 F.3d 925, 932 (6th Cir. 2020). Thomas does not allege that he was ever taken into custody by the GSCD Defendants, meaning he has not alleged a constitutional violation. Swanson and Tocarchick are entitled to qualified immunity on Count 2.

b. Count 3: State Created Danger

The sole exception to the rule just set out is known as the state-created danger doctrine: if the state creates or exacerbates a danger to an individual not in its custody, it may violate the victim's substantive due process rights. *See Jane Doe*, 954 F.3d at 932. Such a claim has three elements. First, the state official must "take an affirmative act . . . that either creates or increases the right that the plaintiff will be exposed to private acts of violence." *Id.* (internal quotation marks, brackets, and citation omitted). "Next, this risk of private harm must rise to the level of a special danger to a specific victim that exceeds the general risk of harm the public faces

from the private actor." *Id.* (internal quotation marks and citation omitted). Finally, the official must act with a "sufficiently culpable mental state." *Id.*

Nothing in Thomas's Amended Complaint alleges an affirmative act taken by either Swanson or Tocarchick that created or increased a risk of harm. Indeed, neither Swanson nor Tocarchick is mentioned in Count 3 of the Amended Complaint, despite being labeled as brought against "All Defendants." *See* ECF No. 46 at PageID.281–291. And in response to the GCSD Defendants' motion, Thomas lists myriad failures to act but no affirmative actions. *See* ECF No. 55 at PageID.530. The "failure to act is not an 'affirmative act' under the state-created danger theory." *Wilson v. Gregory*, 3 F.4th 844, 858 (6th Cir. 2021) (citation omitted). Thomas has not pleaded the essential elements of a constitutional claim here, meaning Swanson and Tocarchick are entitled to qualified immunity on Count 3.

c. Count 4: Retaliation

To plead a retaliation claim, Thomas must plead three elements: (1) that he "was engaged in a constitutionally protected activity;" (2) that the GCSD Defendants' "adverse action caused [him] to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity," and (3) "that the adverse action was motivated at least in part as a response to the exercise

of [his] constitutional rights." *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006) (citation omitted).

Thomas satisfies the first element because reporting a crime is a core element of the First Amendment's free-speech right "to petition the Government for a redress of grievances." U.S. CONST. amend. I; *see, e.g.*, *Rudd v. City of Norton Shores*, 977 F.3d 503, 513 (6th Cir. 2020). Next, Thomas must show that a Defendant took a sufficiently serious "adverse action" against him. An adverse action is one that is "capable of deterring a person of ordinary firmness from exercising the constitutional right in question." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (internal quotation marks and citation omitted). This is a relatively low bar where the deterrent effect "need not be great to be actionable." *Thaddeus-X v. Blatter*, 175 F.33d 378, 397 (6th Cir. 1999) (en banc) (citation omitted). And because Thomas is an ordinary citizen, the bar is further reduced. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (explaining that the average prisoner may have to endure more than the average public employee, who may have to endure more than the average citizen). "Even the threat of an adverse action" is sufficient. *Hill*, 630 F.3d at 472.

Thomas alleges that Swanson and Tocarchick took several adverse actions, including refusing to investigate his complaint; threatening him by stating "[y]ou're going to get yourself in trouble"; and relaying his complaint to the Whaley

Defendants, which led to the Whaley Defendants calling him in for a meeting. ECF No. 46 at PageID.270–72. Viewing these allegations in the light most favorable to Thomas, he has pleaded actions that would deter a person of ordinary firmness from further exercising his right to petition government officials. *See, e.g.*, *Holzemer v. City of Memphis*, 621 F.3d 512, 524–25 (6th Cir. 2010) (finding that delay and statements that the plaintiff "d[id] this to [him]self" were sufficiently adverse actions). Not only was Thomas threatened with "trouble," his allegations were reported to the alleged abusers themselves rather than investigated. This Court finds that a reasonable jury could conclude that this conduct would deter a person of ordinary firmness, and therefore, constitutes an adverse action.

Third, Thomas must plausibly plead that Defendants' actions were improperly motivated, at least in part, by the exercise of his constitutional right to report crime. "[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Bloch v. Ribar*, 156 F.3d 673, 681–82 (6th Cir. 1998) (citation omitted). Further, temporal proximity between the protected speech and the retaliatory action is sufficient to allege a causal connection between the two. *See, e.g.*, *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283–84 (6th Cir. 2012) (collecting cases); *see also Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *9 (6th Cir. Jan. 26, 2022) (White, J., concurring) ("Although temporal

proximity may prove to be insufficient at some later stage of the proceedings, [the plaintiff]'s allegations are sufficient at the pleadings stage."). Here, Thomas alleges that Tocarchick threatened him with "trouble" at the time he reported the abuse allegations, and that he was called in to meet with the Whaley Defendants less than two weeks after making the report. Having not had contact with Whaley for years at that point, Thomas alleges that it was Swanson or Tocarchick that informed the Whaley Defendants of Thomas's abuse allegations. This temporal connection between Thomas's protected activity and the retaliatory action suffices to plead the final element of Thomas's constitutional claim. *See McDonough*, 2022 WL 223633, at *9.

Finally, it has long been clearly established that public officials may not retaliate against citizens for exercising their First Amendment rights. *See, e.g.*, *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994) ("The law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional."); *see also Myers v. City of Centerville*, 41 F.4th 746, 766 (6th Cir. 2022) ("Ultimately, whether a speech-retaliation claim is clearly established at the pleadings stage rises and falls with whether the claim was sufficiently alleged."). Therefore, Swanson and Tocarchick are not entitled to qualified immunity on Count 4.

d. Count 5: Right to Access the Courts

Much of Thomas's Amended Complaint centers on the allegation that Swanson and Tocarchick were obligated to investigate his complaints of child abuse, and by failing to investigate, they impeded his access to the courts. However, "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). As the Supreme Court explained in *Linda R.S.*, one citizen has no "judicially cognizable interest in the prosecution or nonprosecution of another." 410 U.S. at 619. In turn, Thomas has no "right of access" to the criminal justice system as it relates to the investigation or prosecution of any Whaley Defendant. *See id.* Therefore, Swanson and Tocarchick are entitled to qualified immunity on Count 5.

*2. Monell Liability*

GCSD seeks dismissal of Count 6 solely because it argues that no individual Defendant violated Thomas's rights. *See* ECF No. 51 at PageID.394–95. Thomas responds by arguing (1) that he has adequately pleaded multiple constitutional violations; (2) that GCSD's final policymaker, Swanson, ratified illegal actions by declining to investigate his claims; and (3) that the refusal to report child sexual abuse as required by Michigan law demonstrates a failure to train employees. *See* ECF No. 55 at PageID.538.

To impose liability on a municipality via § 1983, a plaintiff must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Critical here is the "policy or custom": A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* For this reason, Counts 2, 3, and 5 will be dismissed as to GCSD. Count 4 will also be dismissed, for although it adequately pleads a constitutional violation, Thomas makes no argument as to how the *County* was involved in the retaliation.

However, contrary to Defendants' assertion, it is "proper to consider possible constitutional violations committed by a municipality *qua* municipality, even in the absence of a showing of a constitutional violation by any one individual officer," *Grote v. Kenton Cnty.*, 85 F.4th 397, 414 (6th Cir. 2023). Therefore, this Court may consider Count 6 even though many of Thomas's claims against Swanson and Tocarchick will be dismissed. If Thomas shows a constitutional violation in Count 6, the claim may continue. *See id*. That said, a successful *Monell* claim requires one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005).

Regarding Thomas's first argument—Swanson's ratification of the noninvestigation—as explained above, there is no obligation to investigate. *See Mitchell*, 487 F.3d at 378. Therefore, Swanson did not take an illegal action by failing to investigate, so there is no constitutional violation and no municipal liability may attach.

As to his failure-to-train, theory, Thomas alleges that GCSD failed to train its employees in compliance with mandatory child abuse reporting statutes. A failure-to-train claim requires a showing of "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller,* 606 F.3d at 255 (citation omitted). Thomas has made no such showing, meaning his failure-to-train theory is not viable. Count 6 will therefore be dismissed.

*3. State Law Immunity*

Turning to the state law claims, the GCSD Defendants argue they are entitled to immunity under Michigan's Government Tort Liability Act ("GTLA"), MICH. COMP. LAWS § 691.1407. *See* ECF No. 51 at PageID.387–89. Thomas responds that they fall under the gross negligence exception to GTLA immunity, given the failures to investigate his report and to report the allegations of child abuse as required by Michigan law. *See* ECF No. 55 at PageID.523–27. This Court finds that the GCSD

Defendants were not the proximate cause of Thomas's damages, meaning they are entitled to GTLA immunity.

Under the GTLA, state employees acting within the scope of their authority and exercising a governmental function are entitled to immunity from tort liability as long as the employees' "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." MICH. COMP. LAWS § 691.1407(1), (2)(c). The Michigan Supreme Court has held that the phrase "the proximate cause," as used in § 1407, does not mean "a proximate cause," as the term is commonly understood in tort law. *Robinson v. City of Detroit*, 613 N.W.2d 307, 319 (Mich. 2000). Rather, it means "the one most immediate, efficient, and direct cause of the injury or damage." *Id.* In *Robinson*, the Michigan Supreme Court held that passengers in a stolen vehicle that crashed during a high-speed police chase could not sue the police officers, because their pursuit of the vehicle was not *the* proximate cause of injury as opposed to *a* proximate cause. *Id.* Rather, the plaintiff's injury was more directly caused by "the reckless conduct of the drivers of the fleeing vehicles." *Id.*

Here, the GCSD Defendants do not dispute that they were state employees acting within the scope of their authority and exercising a governmental function. *See* ECF No. 51 at PageID.387. However, they persuasively argue that their actions—declining to investigate Thomas's claims—were not *the* proximate cause of his injury. *Id.* at PageID.388–89. As is evident on the face of Thomas's Amended

Complaint, he was allegedly repeatedly injured by Jennings and the other Whaley Defendants. It was their purported abuse that injured him, and Thomas has not identified any injury that occurred independent of that abuse. Thus, no reasonable jury could conclude that the GCSD Defendants were *the* proximate cause of his injury as defined by MICH. COMP. LAWS § 691.1407. *See, e.g.*, *Martinez v. Sch. Dist. of the City of Wyandotte*, No. 2:23-cv-12714, 2026 WL 736293, at *18 (E.D. Mich., Mar. 16, 2026) (collecting cases holding that "where a child is abused by a third party, . . . the third party is *the* proximate cause of the child's injuries, and the governmental employee will not be held liable.").

Thomas, for his part, argues that the GCSD Defendants exacerbated his emotional damages by failing to investigate the report of abuse. *See* ECF No. 55 at PageID.525. But this underscores the above conclusion: Thomas was already injured before he contacted the GCSD Defendants. Therefore, they were not *the* proximate cause of his injuries under Michigan law. Accordingly, the GCSD Defendants are entitled to immunity from suit on Thomas's Michigan tort claims (Counts 8–14).

*4. Remaining Causes of Action*

Finally, Counts 9 and 10, as pleaded, do not state claims under Michigan law because there is no civil cause of action for violations of Michigan's Crime Victims' Rights Act (Count 9), nor one for obstruction of justice (Count 10). *See* ECF No. 55 at PageID.516 (conceding that the Crime Victim Rights Act does "not create a

standalone private right of action for damages"); MICH. COMP. LAWS § 750.505 (setting out the crime of obstruction of justice, but not setting out a civil cause of action for the same). Accordingly, those claims will be dismissed against all Defendants.

### C. Plaintiff's Motion to File Third Amended Complaint and for Extension of Time to Effect Service

Despite adding the Lakeside Defendants to his Second Amended Complaint, Plaintiff did not serve these Defendants before the time for service under Civil Rule 4 elapsed on January 24, 2026. On August 6, 2026, this Court ordered Thomas to show cause why the Lakeside Defendants should not be dismissed. *See* ECF No. 60. In response, Thomas explained that the Lakeside Defendants no longer exist as identified in the Second Amended Complaint, and that a Third Amended Complaint is necessary to properly identify the Defendants in this matter. *See* ECF Nos. 62 at PageID.566; 63. Thomas's counsel further admits that the failure to serve the Lakeside Defendants was his error (not Thomas's), and requests additional time to serve the newly added defendants after filing a Third Amended Complaint. *See* ECF No. 63.

Although the two issues are intertwined, this Court begins with Thomas's request for leave to amend. Civil Rule 15 provides that leave to amend should generally be "freely give[n]," FED. R. CIV. P. 15(a)(2), so long there is no "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on

the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, leave to amend is appropriate. While there has certainly been delay, this Court finds no evidence of bad faith on Thomas's, or his counsel's, part. And because Thomas's claims are still timely, any prejudice to the yet-to-be-added defendants is marginal. This Court will therefore permit Thomas to file a Third Amended Complaint that comports with this Opinion.

Turning to service, Civil Rule 4(m) requires this Court to extend the time for service if a plaintiff demonstrates good cause for the failure. FED. R. CIV. P. 4(m). Absent a finding of good cause, this Court retains discretion to extend the time. See *id.*; *see also United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022).

Thomas's counsel's efforts do not demonstrate good cause, given his failure to timely request an extension or indicate to the Court the problems with the Lakeside Defendants as pleaded. Indeed, it appears Thomas's counsel did not begin to investigate the Lakeside Defendants until April 2026–several months after the time for service elapsed. *See* ECF No. 64-2 (first reaching out to the Lakeside Defendants' counsel in April 2026); *see also* ECF No. 62 at PageID.564 (admitting there is no good cause for counsel's failure to timely serve MDHHS).

However, this Court will not fault Thomas for his counsel's errors. *See, e.g.*, *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997) (collecting cases holding that "[d]ismissal is *usually* inappropriate where the neglect is solely the fault of the attorney") (citation omitted). Indeed, it appears Thomas attempted to "serve" the Lakeside Defendants via email shortly after the operative Amended Complaint was filed. *See* ECF No. 62-4. This Court is also mindful that claims should be adjudicated "on their merits rather than the technicalities of pleadings," when possible. *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). Therefore, this Court will consider whether a discretionary extension of the time for service is appropriate.

The Sixth Circuit has identified the following factors as relevant to a discretionary extension:

> (1) whether an extension of time would be well beyond the timely service of process;
>
> (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;
>
> (3) whether the defendant had actual notice of the lawsuit;
>
> (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred;
>
> (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;
>
> (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and

> (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*Oakland Physicians*, 44 F.4th at 569.

Here, the factors counsel in favor of a short discretionary extension. Although the extension would be well beyond the time proscribed in Civil Rule 4, the yet-to-be-added Defendants apparently have notice of this lawsuit, given Thomas's transmission of the Amended Complaint. And as noted above, the prejudice to these Defendants is likely minimal, given that Thomas's claims are timely. Indeed, if an extension is denied, Thomas could simply file a new complaint under a fresh case number. While counsel's failure to timely investigate and serve the Lakeside Defendants weighs against extension, this Court finds that on balance, extension is appropriate. Therefore, this Court will allow Thomas **30 days** from the date of filing his Third Amended Complaint to serve the newly-added Defendants.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that the Whaley Defendants' incomplete Motion to Dismiss, ECF No. 48, is **DENIED** as moot.

It is further **ORDERED** that the Whaley Defendants' Motion to Dismiss, ECF No. 49, is **GRANTED** in part, as follows: Counts 2, 3, 4, 5, 8, 9, and 10 shall be **DISMISSED** against these Defendants. The remaining portions of the Whaley Defendants' Motion to Dismiss are **DENIED**.

It is further **ORDERED** that the Genesee County Sheriff's Department Defendants' Motion to Dismiss is **GRANTED** in part as follows: Counts 2, 3, 5, 6, 8, 9, and 10 shall be **DISMISSED** against these Defendants. The remaining portions of the GCSDs' Motion to Dismiss are **DENIED**.

It is further **ORDERED** that Plaintiff's Motion for an Extension of Time to Effect Service under Fed. R. Civ. P. 4(m), and Motion for Leave to File a Third Amended Complaint, ECF No. 63, is **GRANTED**. Plaintiff may file a Third Amended Complaint no later than October 14, 2026 Plaintiff must serve that Complaint no later than November 13, 2026.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 23, 2026